[Crim. No. 6328. In Bank. Mar. 17, 1959.]

THE PEOPLE, Respondent, v. HERBERT J. MATTSON, Appellant.

John T. Schall, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

SCHAUER, J.—A jury found defendant guilty of three counts of issuing checks without sufficient funds (Pen. Code, § 476a) and found that he had suffered a prior conviction of felony. Defendant appeals from the ensuing judgment. As the sole ground for reversal he contends that an indigent defendant is entitled as a matter of constitutional and statutory right both to conduct his own defense *and* to be provided with the services of court-appointed counsel to advise and assist him in a subservient capacity in preparing for and during trial. We have concluded that the right to counsel does not include an absolute right to services of the character and capacity indicated; that the court should not appoint counsel to defend an indigent and require that in so doing the attorney surrender any of the substantial prerogatives traditionally or by statute attached to his office; that a defendant for whom counsel is appointed should not be permitted both to have counsel and to actively participate in the conduct of the case unless the court in its discretion determines that in the circumstances of the case the cause of justice will thereby be served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed; that under the circumstances of this case there was no error in refusing to appoint counsel to act in a subservient capacity; and that for the reasons aforesaid and hereinafter developed the judgment of conviction should be affirmed.

*The Evidence as to the Substantive Offenses.* On June 20 and 21, 1955, defendant, a resident of Louisville, Kentucky, made three purchases (a typewriter, a watch, and a camera) in three San Diego shops. For each purchase he gave a check on the printed form of OK Auto Parts, signed by defendant and drawn on the Liberty National Bank and Trust Company of Louisville. Each seller deposited his check for collection and none of the checks was paid. OK Auto Parts, a firm owned by defendant's wife and managed by defendant, had had two

checking accounts with the Louisville bank but those accounts were closed in 1947. Since 1947 neither defendant nor the firm had any account with that bank.

Defendant testified as follows: When he wrote the subject checks he was suffering from "hysterical amnesia." He has no knowledge of having been in San Diego in June, 1955, of having written the subject checks, or of having had the typewriter, watch, or camera. His wife gave him the printed forms of checks "and the defendant was advised that there was an account at the Liberty National Bank." At the time defendant wrote the checks he "had many thousands of dollars" and "could have charged any of these items. I didn't have to write a check and steal them." (Defendant's property has since been "tied up" because of a divorce action by his wife.)

Defendant further testified confusingly as follows concerning the Louisville bank account; "[D]uring May, 1955, just prior to the issuance of these checks, the defendant put in the bank of Louisville in one of the OK Auto Parts account[s], of his own money, over $1,000 in $100 bills" yet "all during May, the account was closed." "I put over $2,000 in the Bank of Louisville during the week just before I went on this trip [to San Diego]. . . . I was in the bank trying to give them trade acceptances for Mrs. Mattson and notes for collateral to be put into the account, and [a director and vice president of the bank] . . . told me to send Mrs. Mattson in with them since he couldn't give me any information on the accounts since I was not the owner."

A psychiatrist who had examined defendant testified for the People that "there was nothing presented by the defendant to convince me that at any time in the past that he had had a valid amnesia."

*Defendant's Insistence upon Representing Himself and at the Same Time Being Afforded the Assistance of Counsel.* On August 21, 1957, defendant appeared in the superior court for arraignment. Proceedings on this and subsequent days through the time of trial (September 25 and 26, 1957), quoted and summarized in the margin,[1] disclose the following situation:

---

[1] On August 21, 1957, when the case was called, defendant produced a petition for habeas corpus and asked the court "if it will direct it be entered properly with the Clerk of the court and notarized accordingly." The court said that the petition "doesn't have to be verified. Just file it. . . . Better serve the District Attorney with a copy." The following then occurred:

"THE DEFENDANT: The defendant has been trying to get the proper

Defendant repeatedly refused to accept appointment of counsel to represent him and insisted upon representing himself. He asked and the court refused appointment of counsel to aid

---

papers so that he could give verified copies, service on the District Attorney, but has no means to do so.

"THE COURT: You use the term 'the defendant.' You are the defendant, aren't you?

"THE DEFENDANT: Yes, and I am acting as my own counsel, your Honor.

"THE COURT: Why don't you have counsel?

"THE DEFENDANT: I had an unfortunate experience in Kentucky and it was through an appeal that I got out of a bad situation because the Court appointed attorney did not call my witnesses and a biased judge forced me to trial. . . .

"THE COURT: Okay. What do you want to do about the arraignment on the checks?

"THE DEFENDANT: The defendant pleads not guilty and not guilty by reason of insanity and asks a jury trial in both instances.

"THE COURT: You are entitled to that as a matter of right unless you waive it . . .

"THE DEFENDANT: Since the defendant has no way of subpoenaing witnesses, these are the two witnesses and the papers that the defense would like subpoenaed. (Hands documents to clerk.)

"THE COURT: George, will you give the defendant some subpoenas so he can get them out while he is in jail? If he doesn't want counsel I can't ask anybody else to prepare them for him. . . .

"THE DEFENDANT: I would like to enter this in a motion to dismiss. (Hands papers to Court.) . . .

"THE COURT: Mr. Mattson, if you are going to make a motion to quash something you'd better do it before you enter a plea. Better set aside your plea and we will put this on the calendar for Friday morning . . .

"THE CLERK: What about this writ of habeas corpus?

"THE COURT: We will hear that on Friday morning, too. . . .

"THE CLERK: Your true name is Herbert J. Mattson?

"THE DEFENDANT: Legal name, sir.

"THE CLERK: You are representing yourself, Mr. Mattson?

"THE DEFENDANT: I represent myself.

"THE COURT: It is my understanding you don't want Court appointed counsel.

"THE DEFENDANT: I would appreciate Court appointed counsel only for the purpose of assisting me in filing these things, but not to defend myself in a jury trial, no. [Defendant then filed in the superior court a "Motion to Vacate Warrant" and "subpoenas," not in proper form, for witnesses and papers. In a document filed by defendant in propria persona in this court he says that he wished to file "motions for Out-Of-State Witness Depositions, Court Records, Bank Statement [and other documents], . . . which had not been put into court acceptable form. Since Prisoner Appellant did not have proper paper, notary service or the legal advice he needed."]

"THE COURT: I don't know where to draw the line.

"THE DEFENDANT: Under the Constitution of California I am allowed that, if your Honor thinks it would be more feasible?

"THE COURT: Well, if we appoint a lawyer for you he will represent you for this case because all the motions you are making, you can't separate the motions from the case.

"THE DEFENDANT: I don't want any lawyer to hire—

"THE COURT: Okay. You represent yourself."

On August 23, 1957, defendant's "Motion to Vacate Warrant" and

defendant in filing papers, preparing subpoenas, and obtaining documents. The court of its own motion gave defendant much legal advice. Defendant was mentally competent and alert

his petition for habeas corpus were heard and denied. Defendant then pleaded not guilty and not guilty by reason of insanity, and the following occurred:

"THE DEFENDANT: If it please your Honor, the Court recognizes the sanity of the defendant by allowing him to plead his own case and since this alleged crime happened in 1955 and the defendant has, by a competent jury at a mental inquest in the State of Kentucky been found sane, I ask the Court to please waive a psychiatrist. The defendant should not be forced to give testimony and be a witness during his insanity hearing.

"THE COURT: Well, the law provides if you enter a plea of not guilty by reason of insanity we have to appoint two psychiatrists. We can't waive the law. I was going to suggest since you are representing yourself and pleading not guilty by reason of insanity, I think you are going to have considerable difficulty. In one breath you say you are insane and in the next breath you want to represent yourself. Maybe that is natural. I don't know.

"THE DEFENDANT: Your Honor, the defendant didn't state that. The defendant merely stated he is sane now, but he has entered an insanity plea on the alleged crime at the time of the crime and for your Honor's information Dr. Van Hagen, appointed by the Judge of the Federal Court, Southern District [Los Angeles], found the defendant in the case before that Court insane, and since then has found the defendant sane.

"THE COURT: Well, we will have to go through the same procedure and whether you claim to be insane at that time or at this time, or at both times, we have to have two psychiatrists appointed. . . . If you don't want to tell the doctor anything you don't have to."

On September 18, 1957, an amended information was filed, and the following occurred:

"THE COURT: Well, you are not represented by counsel?

"DEFENDANT MATTSON: I am my own counsel.

"THE COURT: The Court offered to appoint an attorney for you.

"DEFENDANT MATTSON: Yes, your Honor. . . .

"THE CLERK: You are not represented by counsel and you don't wish counsel?

"DEFENDANT MATTSON: That is correct."

Concerning the alleged prior conviction of felony, defendant said, "a Presidential pardon [has] been issued . . . and as to the defendant's knowledge, this is not a prior." The court suggested that "you better deny the prior then." Defendant said, "the defendant is not in a position to deny or affirm, having actually been declared insane several times. . . . I would rather admit to it without knowledge because all I have is a quasi conscious knowledge. . . . I want to admit to the prior since I cannot prove differently at this time, and I prefer to do that." Defendant pleaded not guilty and not guilty by reason of insanity to the substantive offenses charged in the amended information. The court set September 25, 1957, for trial and said, "If you want an attorney to defend you, I will appoint one." Defendant replied, "No, your Honor, I do not."

On September 20, 1957, defendant again appeared in court and the following occurred: (We note that defendant in propria persona has presented to this court a document by which he asks this court to correct the transcript of September 20, 1957, in certain respects. Defendant has not met the requirements of Rule 12 (b) of the Rules on Appeal, which

and had some knowledge of law, but either did not understand or refused to recognize some rules of procedure, particularly rules of evidence. He clearly indicated that he did not wish to

provides that "If any material part of the record is incorrect in any respect . . ., the reviewing court, on suggestion of any party . . ., may direct that it be corrected." Defendant's proposed "corrections" are not material. If they were made they would merely reiterate what is already apparent from the record; i.e., that defendant took the position that he was entitled to be furnished the assistance but to refuse the representation of counsel.)

"THE COURT: This defendant . . . wanted to represent himself. He didn't want counsel.

"DEFENDANT MATTSON: I still didn't want counsel.

"THE COURT: Why did you write the letter saying you wanted an attorney?

"DEFENDANT MATTSON: . . . [T]he deputies . . . told me the subpoenas that the court clerk furnished me were the wrong ones for the out of town witnesses. . . . I would want counsel appointed only for the purpose of subpoenaing the witnesses properly. . . .

"THE COURT: If you want an attorney to act as a stenographer, that is one thing; but if you want an attorney to represent you as an attorney, that is another.

"DEFENDANT MATTSON: I think the Constitution allows me to have the assistance of counsel for that purpose, that I have to be represented by counsel.

"THE COURT: We don't have stenographers to represent people, we have lawyers.

"DEFENDANT MATTSON: I don't want a lawyer, I just want my witnesses to appear at the trial . . .

"THE COURT: I would suggest that you give us a list of the witnesses you want subpoenaed, and the District Attorney's office has a stenographer down there and they will prepare it for you. . . . You will get your subpoenas. I just want to know if you want a lawyer.

"DEFENDANT MATTSON: No, I don't want counsel."

(Pertinent to defendant's expressed attitude concerning the aid of counsel, it is further noted that in a document which was proffered by defendant in propria persona to the District Court of Appeal when this case was before that court, which was not filed in that court because defendant was there represented by court-appointed counsel, but which accompanies the record, defendant states that several days prior to August 21, 1957, an attorney visited him in jail and defendant informed the attorney that defendant "would not accept counsel to defend him" because counsel "could bind him to something he would not wish to participate in" but that "he would seek counsel to assist and legally advise him.")

On September 25, 1957, immediately before trial, defendant stated that he wished to deny the previously admitted prior conviction. He was permitted to do so after the court (in substance) explained, and defendant stated that he understood, that the allegation of the prior conviction, if denied, would be read to the jury and evidence to prove it received.

At the trial all admissible evidence and much irrelevant evidence offered by defendant was admitted. Defendant examined a police officer as to whether he took from defendant "papers . . . including certified deposits in the bank where this would have shown that . . . there was money in the account"; the officer testified that he did not take any papers from defendant; defendant made no further effort to prove that there were "certified deposits" or "money in the account."

By examination of an attorney who had represented defendant, by

be represented by counsel because he correctly understood that if he were so represented counsel could control the presentation of the case[2] and defendant would have no right to participate actively in the conduct of the trial.[3] No attempt of the prosecution to take improper advantage of defendant appears and (leaving aside for the moment the question of defendant's

defendant's own testimony, and by cross-examination of the psychiatrist who testified for the People, defendant sought to show the contents of the report of another psychiatrist (a resident of Los Angeles) who had concluded in 1956 that defendant had suffered from amnesia. The trial court explained that if defendant wanted the Los Angeles psychiatrist's testimony he should have called him as a witness. Defendant said, ''I would like to do that,'' but he did not do so, although the appearance of other persons from Los Angeles who were subpoenaed as witnesses on defendant's behalf shows that defendant was not denied the opportunity to obtain the testimony of out-of-county witnesses.

The court of its own motion diligently sought to protect defendant when he insisted upon bringing out his entire past record of involvement with the law. When, at defendant's invitation, the prosecuting attorney inquired about prior convictions on other charges similar to the principal offenses for which defendant was being tried, defendant explained that he had ''made deals'' with the prosecuting attorneys and judges whereby, in return for defendant's pleas of guilty, some charges were reduced and others were dismissed.

After the jury found against defendant on his plea of not guilty, he asked to withdraw his plea of not guilty by reason of insanity. The court permitted defendant to do so only after it had fully advised him of his right to be tried on the insanity issue and had expressly found, on the basis of its own observation and of reports of the court-appointed psychiatrists who had examined defendant, that defendant had the capacity to withdraw the plea.

[2] ''Generally speaking, 'when the public defender is appointed to represent a defendant accused of a crime, he becomes the attorney for said defendant for all purposes of the case and to the same extent as if regularly retained and employed by the defendant.' (*In re Hough* (1944), 24 Cal.2d 522, 528-529 [150 P.2d 448].)'' (*In re Atchley* (1957), 48 Cal.2d 408, 418 [3] [310 P.2d 15]; see *In re Burroughs* (1957), 148 Cal.App.2d 800, 810 [2] [307 P.2d 709].) The public defender, when he represents a defendant, has the right and duty to control the trial. (*In re Atchley, supra*, p. 418 [4] of 48 Cal.2d; see *People* v. *Merkouris* (1956), 46 Cal.2d 540, 554 [5] [297 P.2d 999].)

[3] An accused has no federal constitutional right to present his case both by counsel and in person in either a federal or a state court. (*Egan* v. *Teets* (C.A. 9, 1957), 251 F.2d 571, 579 [15], cert. den. 352 U.S. 853 [77 S.Ct. 76, 1 L.Ed.2d 63]; *Shelton* v. *United States* (C.A. 5, 1953), 205 F.2d 806, 812-813, cert. dismissed on petitioner's motion, 346 U.S. 892 [74 S.Ct. 230, 98 L.Ed. 395], petitioner's motion to vacate dismissal den., 349 U.S. 943 [75 S.Ct. 876, 99 L.Ed. 1269]; *United States* v. *Foster* (U.S.D.C., S.D.N.Y., 1949), 9 F.R.D. 367, 372, convictions affirmed, *United States* v. *Dennis* (C.A. 2, 1950), 183 F.2d 201, 233 [40, 41], *Dennis* v. *United States* (1951), 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137].) It may be mentioned that, although a federal court in its discretion may permit a party to appear both in person and by counsel, or may permit a party who is represented by counsel to conduct the trial while counsel sits silent, it has been said that such practices are usually undesirable. (*Brasier* v. *Jeary* (C.A. 8, 1958), 256 F.2d 474,

right to the aid of an attorney) the record discloses no unfairness in his trial and no miscarriage of justice in his conviction.

Although defendant in the superior court asked only for assistance of an attorney to prepare particular papers designated by defendant (that is, for aid in a quasi-clerical capacity), on appeal he urges that the superior court should have appointed an attorney to furnish legal advice as to the preparation and presentation of his defense. No California case has been found which discusses the question whether a defendant who insists upon representing himself has the right to have court-appointed counsel to assist and advise in preparation for or during the trial. ■ The following rules are pertinent:

The California Constitution (art. I, § 13) provides that "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend, in person and with counsel." This right is implemented by various statutory provisions, including the following: When defendant is brought before a magistrate on an arrest, the magistrate must inform him "of his right to the aid of counsel in every stage of the proceedings." (Pen. Code, § 858.) The magistrate, and the superior court before arraignment, must ask defendant "if he desires the aid of counsel," and if defendant desires and is unable to employ counsel, "must assign counsel to *defend* him." (Pen. Code, §§ 859, 987; italics added.) "In a criminal action the defendant is entitled: . . . 2. To be allowed counsel as in civil actions, or to appear and defend in person and with counsel." (Pen. Code, § 686.)

The foregoing sections accord the accused not only a right to counsel but also a right to represent himself if he so elects. Except in certain situations not here pertinent,[4] the court can-

478; *Overholser* v. *De Marcos* (C.A., D.C., 1945), 149 F.2d 23, 26 [13], cert. den. 325 U.S. 889 [65 S.Ct. 1576, 89 L.Ed. 2002].)

The right of a California defendant to appear and defend in person *and* with counsel, granted by the state Constitution (art. I, § 13) and statute (Pen. Code, § 686) does not include the right to conduct the defense both in person and through counsel; in the interest of orderly procedure the trial court can require a defendant to elect whether he or his counsel will actively conduct the case. (*People* v. *Northcott* (1930), 209 Cal. 639, 648-649 [6], 651 [289 P. 634, 70 A.L.R. 806].) A defendant who is represented by counsel is not entitled as a matter of right to personally conduct his case (*People* v. *Glenn* (1950), 96 Cal.App.2d 859, 868 [216 P.2d 457]) ; rather, "usually, and properly, counsel should conduct the trial" (*People* v. *McKinney* (1957), 152 Cal.App.2d 332, 336 [6] [313 P.2d 163]).

[4]Pen. Code, § 859a (defendant not represented by counsel cannot plead guilty before the magistrate), § 860 (only "a defendant represented by counsel" can waive his right to a preliminary examination before the

not force a competent defendant to be represented by an attorney. (*People* v. *Rose* (1919), 42 Cal.App. 540, 553 [7] [183 P. 874]; see also *Adams* v. *United States* (1942), 317 U.S. 269, 279 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435].)

█ As has been stated (*ante,* footnote 3), despite the constitutional (art. I, § 13) and statutory (Pen. Code, § 686) provisions that defendant has the right to appear and defend in person *and* with counsel, defendant is not entitled to have his case *presented* in court *both by himself and by counsel* acting at the same time or alternating at defendant's pleasure. (*People* v. *Northcott* (1930), *supra,* 209 Cal. 639, 648-650 [6] 651; *People* v. *Mims* (1958), 160 Cal.App.2d 589, 595 [2] [325 P.2d 234].) So long as defendant is represented by counsel at the trial, he has no right to be heard by himself (*People* v. *McKinney* (1957), *supra,* 152 Cal.App.2d 332, 336 [6]; *People* v. *Glenn* (1950), *supra,* 96 Cal.App.2d 859, 868); conversely, when defendant has intelligently declined the aid of counsel he has no right to interrupt the trial with a demand for legal assistance (*In re Connor* (1940), 16 Cal.2d 701, 709 [8] [108 P.2d 10]).

█ A fundamental reason for according to an accused the right to counsel is that without the aid of an attorney other protections which the law affords would often avail defendant little since it cannot be assumed that he is sufficiently articulate and adequately conversant with his constitutional and legal rights and his procedural duties to protect himself throughout the course of criminal proceedings. █ Therefore, the federal courts, in determining whether a state's denial of counsel amounts to a denial of federal due process, and the California courts, in determining the extent of the right to counsel under state law, consider such matters as the intricacy of the accusatory pleading, the complexity of the law as to the *offense* charged and included offenses, defendant's intelligence, education, experience (including familiarity with the criminal law derived from prior prosecutions), youth, mental and physical health and emotional condition, the attitude of the court and the prosecuting officials and the existence of inflamed public opinion, and also the severity of the penalty. Considering the foregoing matters, the courts have developed familiar rules, stated in the margin, as to the scope of an accused's right to

magistrate), § 1018 (court cannot receive plea of guilty to crime for which maximum punishment is death or life imprisonment without possibility of parole unless defendant is represented by counsel).

representation by counsel at the trial and in the antecedent proceedings.[5]

 Correlative to a defendant's California right to have counsel (whether employed or appointed) afforded opportunity to prepare so that he can intelligently advise and represent defendant, is the public defender's duty not merely to "defend" the indigent accused in court but also to "give coun-

---

[5]Federal due process requires a state to furnish counsel to a defendant unable to employ an attorney, whether or not defendant requests such appointment, if the lack of representation results in "fundamental unfairness." (*Uveges* v. *Pennsylvania* (1948), 335 U.S. 437, 441 [69 S.Ct. 184, 93 L.Ed. 127]; *Wade* v. *Mayo* (1948), 334 U.S. 672, 683-684 [68 S.Ct. 1270, 92 L.Ed. 1647]; *Powell* v. *Alabama* (1932), 287 U.S. 45, 71 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527].) Where federal due process requires appointment of counsel, the state court's appointment must be effective. It must afford counsel time and opportunity, and impose upon him the duty, to consult with defendant and investigate and prepare the case for trial. (*Powell* v. *Alabama* (1932), *supra*, 287 U.S. 45, 71.) The accused has the right to counsel at every step of the proceedings leading to conviction, not only to effective representation at the trial on the merits but also to the advice of counsel as to whether a plea of guilty is appropriate (*Herman* v. *Claudy* (1956), 350 U.S. 116 [76 S.Ct. 223, 100 L.Ed. 126]; *Williams* v. *Kaiser* (1945), 323 U.S. 471, 475 [65 S.Ct. 363, 89 L.Ed. 398]; *Tomkins* v. *Missouri* (1945), 323 U.S. 485, 488-489 [65 S.Ct. 370, 89 L.Ed. 407]), and, where objections must be raised before the case is at issue, to appointment of counsel at a time which will enable defendant to make such objections (*Reece* v. *Georgia* (1955), 350 U.S. 85, 89 [76 S.Ct. 167, 100 L.Ed. 77]).

Similarly the California right to counsel requires an effective, not a mere pro forma, appointment. Counsel must be afforded time and opportunity for investigation and consultation with defendant in the preparation of the defense (*In re Ochse* (1951), 38 Cal.2d 230, 231 [1] [238 P.2d 561]; *People* v. *Sarazzawski* (1945), 27 Cal.2d 7, 17 [14] [161 P.2d 934]; *In re Qualls* (1943), 58 Cal.App.2d 330 [136 P.2d 341]; *People* v. *Simpson* (1939), 31 Cal.App.2d 267, 270 [1] [88 P.2d 175]; *In re Snyder* (1923), 62 Cal.App. 697 [217 P. 777]) and opportunity to consult freely with defendant during the trial (*People* v. *Zammora* (1944), 66 Cal.App.2d 166, 234-235 [33, 34] [152 P.2d 180]). Defendant is entitled to representation at every step of the proceedings, including the aid of counsel to enable an intelligent decision as to his plea (*People* v. *Chesser* (1947), 29 Cal.2d 815, 820 [1] [178 P.2d 761, 170 A.L.R. 246]; *People* v. *Avilez* (1948), 86 Cal.App.2d 289, 296 [4b], 298 [7] [194 P.2d 829]; *People* v. *McGarvy* (1943), 61 Cal.App.2d 557, 561 [1, 2] [142 P.2d 92]), and to representation at arraignment and pronouncement of judgment (*In re Levi* (1952), 39 Cal.2d 41, 46 [8] [244 P.2d 403]).

Both federal due process and California law require that waiver of the right to counsel, to be effective, must be with an intelligent appreciation of its consequences. (*Moore* v. *Michigan* (1957), 355 U.S. 155, 161-162 [78 S.Ct. 191, 2 L.Ed.2d 167]; *Johnson* v. *Zerbst* (1938), 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]; *In re James* (1952), 38 Cal.2d 302, 313 [8] [240 P.2d 596]; *People* v. *Chesser* (1947), *supra*, 29 Cal.2d 815, 822-825 [4-6]; *In re Jones* (1948), 88 Cal. App.2d 167, 168-169 [198 P.2d 520].) In this connection we repeat and reemphasize the statement which we quoted in *People* v. *Chesser, supra,* p. 822 of 29 Cal.2d, from *Johnson* v. *Zerbst, supra,* p. 465 of 304 U.S.: "*Whether there is a proper waiver should be clearly determined by the*

sel and advice to such person about any charge against him upon which the public defender is conducting the defense." (Gov. Code, § 27706, subd. (a).) ■ And even when a defendant represented by the public defender expresses the desire to plead guilty, "It is his [counsel's] task to investigate carefully all defenses of fact and of law which may be available to the defendant and confer with him about them before he permits his client to foreclose all possibility of defense and submit to conviction without a hearing by pleading guilty." (*People* v. *Avilez* (1948), *supra*, 86 Cal.App.2d 289, 296 [5], citing *In re Hough* (1944), *supra*, 24 Cal.2d 522, 529.) ■ But a defendant who elects to go to trial represented by out-of-state counsel has no right to the services of the public defender as an advisor concerning local law. (*People* v. *Saltz* (1955), 131 Cal.App.2d 459, 470-471 [5a, 6, 5b] [280 P.2d 900].)

■ In the light of the foregoing rules we consider the construction of our Constitution (art. I, § 13) and statutes (Pen. Code, §§ 686, 859, 987) urged by counsel appointed to represent defendant on this appeal. Counsel points out that the requirement (Pen. Code, §§ 859, 987) that "the court [magistrate and trial court] must assign counsel to defend" has only two expressed statutory prerequisites; i.e., an attorney must be assigned if defendant "[1] desires and [2] is unable to employ counsel." Therefore, counsel says, we should not read into the statutes as a further prerequisite to the right to an assigned attorney the condition that defendant give up his right to represent himself. Furthermore, counsel points out, defendant has the constitutional (art. I, § 13) and statutory (Pen. Code, § 686) right "to appear *and* defend in person *and* with counsel" (italics added), yet this right does not include

*trial court, and it would be fitting and appropriate for that determination to appear upon the record."*

In this connection it is noted that the California Legislature, recognizing that the appellate courts often had occasion to consider the contention that a plea of guilty implied a waiver of counsel and to emphasize that such waiver should not be accepted unless it is understandingly made, in 1949 amended section 1018 of the Penal Code to provide that "No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility of parole, shall be received from a defendant who does not appear with counsel, nor shall any plea of guilty of any other felony be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it," and by a 1951 amendment added to the foregoing sentence the following clause: "and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel."

a right of defendant both to represent himself and to be represented by an attorney. (*People* v. *Northcott* (1930), *supra*, 209 Cal. 639, 648-649 [6].) It is counsel's position that the use of the conjunctive "and" in the just quoted provisions of Constitution and statute indicates that a defendant who elects to represent himself still retains some right to the services of counsel, and that since such right does not include representation it must include assistance and advice.

The People reply that the foregoing arguments overlook the normal, dictionary meaning of "defend." That word (as used generally with reference to the act of a party to a lawsuit) means "To deny or oppose the right of the plaintiff" and (as used specifically in referring to the act of an attorney) means "to act on behalf of (an accused person)." (Webster's New Internat. Dict., 2d ed., 1958.) Therefore, the People urge, defendant's right to have counsel assigned "to defend him" (Pen. Code, §§ 859, 987) is the right to have counsel "act on [his] behalf"; i.e., to appear for and represent him.

The People's position is supported not only by dictionary definition but also by the sound concept that it is the duty of the court to safeguard and promote the orderly and expeditious conduct of its business and to guard against inept procedures and unnecessary indulgences which would tend to hinder, hamper or delay the conduct and dispatch of its proceedings.

In this connection it is noted that Business and Professions Code, section 6068,[6] declares in clear language certain duties

---

[6]Bus. & Prof. Code, § 6068: "It is the duty of an attorney:

"(a) To support the Constitution and laws of the United States and of this State.

"(b) To maintain the respect due to the courts of justice and judicial officers.

"(c) To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just, except the defense of a person charged with a public offense.

"(d) To employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.

"(e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client.

"(f) To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged.

"(g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.

"(h) Never to reject, for any consideration personal to himself, the cause of the defenseless or the oppressed."

of an attorney in respect to courts of justice, judicial officers, and the conduct of proceedings before the courts.

Common knowledge of judges and attorneys (and to some extent the transcript in the case at bar, as hereinafter pointed out) suggests that there are at least some persons who, although not members of the bar, undertake to act as their own attorney in presenting their cause or defense and who in so acting do not appear to feel bound to "maintain the respect due to the courts of justice and judicial officers" (§ 6068, subd. (b)) or to "employ, for the purpose of maintaining the causes . . . such means only as are consistent with truth, and never to seek to mislead the judge . . . by an artifice or false statement of fact or law" (*Id.*, subd. (d)) or "To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause" (*Id.*, subd. (f)) or "Not to encourage either the commencement or the continuance of an action . . . from any corrupt motive of passion or interest" (*Id.*, subd. (g)).

It is also a sound concept that the court-appointed attorney as well as the accused is entitled to fair consideration. An attorney at law is a member of an ancient, honorable and deservingly honored profession. He is regarded as an officer of the court, of any court in which he appears. Whether appointed to represent an indigent or employed by a man of wealth or by the state, the diligence and quality of the lawyer's service and the ethical standards of his conduct are the same; his office and the prerogatives of that office, and the respect due to him in the discharge of his duties, are the same. The court should not appoint counsel—whether to defend an indigent or otherwise—and require of him that in so doing he surrender any of the substantial prerogatives traditionally or by statute attached to his office.

The right of an accused to the services of an attorney contemplates that the attorney will investigate possible defenses or alternative procedures and advise the accused of his conclusions, not, as this defendant requested, that the attorney will act as a mere subservient helper under the direction of the accused. Neither the express provisions of California law nor general considerations of fairness require that an intelligent, competent defendant who obdurately insists upon controlling and conducting his own defense should be entitled as a matter of right to the services of counsel to act under defendant's control. Where a defendant

charged with crime is unable to employ counsel, is not statutorily required to have counsel (*ante,* footnote 4), and is competent to decide whether he desires counsel, the defendant during the proceedings before the magistrate and the trial court has as a matter of absolute right but two choices in the matter of a court-appointed attorney: he can accept representation by counsel (as most defendants with the ability to employ counsel have the good sense to do) or he can elect to represent himself. ▮▮▮ If he makes the latter election, he assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken; he is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented by counsel. (*People* v. *Chessman* (1951), 38 Cal.2d 166, 174 [2] [238 P.2d 1001].)

▮▮▮ In the circumstances of this case, the superior court could not force defendant to accept representation of counsel, for he was intelligent and mentally competent and understood (although he did not agree with) the legal effect of his insisting upon representing himself. And in the circumstances defendant's refusal to accept rulings and suggestions of the superior court will not be regarded by this court as showing that defendant was incapable of protecting his rights and presenting his case, particularly in view of the trial court's conclusion, expressed hyperbolically at the end of the proceeding, that "I think, from my own observation, he knows more what he is doing than I know what I am doing."

▮▮▮ Of course there might be circumstances in which a defendant, without being afforded the opportunity to consult privately with an attorney, could not arrive at an intelligent decision as to whether he should represent himself. The trial judge in discharging his "serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver [of the right to counsel] by the accused" (*Johnson* v. *Zerbst* (1938), *supra,* 304 U.S. 458, 465; *People* v. *Chesser* (1947), *supra,* 29 Cal.2d 815, 821-822) has no duty to give defendant a legal education, and the judge has no right, in view of the privilege against self-incrimination, to ask defendant about his understanding of the facts of the case. If the judge's properly limited inquiry concerning the necessity for appointment of counsel suggests that defendant may not comprehend his position then the judge should assign an attorney to consult privately with defendant concerning the

latter's need for representation. Such an appointment of counsel, unlike the appointment sought by defendant here, would not require the attorney to surrender the prerogatives of his position.

Our conclusion that a California defendant has no absolute right to the services of an attorney in a mere advisory capacity harmonizes with the federal law as to right to counsel. [21] It has been said that section 13 of article I of the California Constitution accords to California defendants ''the same right'' as is accorded to federal defendants by the Sixth Amendment of the United States Constitution. (*People* v. *Lanigan* (1943), 22 Cal.2d 569, 575 [140 P.2d 24, 148 A.L.R. 176].) Of course this does not mean that the California right to counsel is or must be identical with the federal right to counsel. Consonant with the federal Constitution the state right could be less comprehensive than the federal right. (*Betts* v. *Brady* (1942), 316 U.S. 455, 471 [62 S.Ct. 1252, 86 L.Ed. 1595].) Actually, in some respects the California right is more comprehensive than the federal right.[7] But since the California right is substantially similar to the federal right, we may appropriately inquire whether the federal right includes the right to services of assigned counsel merely as an assistant and advisor and not as a legal representative.

Rule 44 of the Federal Rules of Criminal Procedure (effective March 21, 1946, 327 U.S. 866, 18 U.S.C.A., 1951 ed.) provides, ''If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel *to represent him* at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel.'' (Italics added.) According to the United States Supreme Court, rule 44 states ''The view of this Court as to the practice best adapted to the needs of the federal courts and most responsive to the requirements of the Federal Constitution and statutes as well as to the decisions of this Court.'' (*Bute* v. *Illinois* (1948), 333 U.S. 640, 662 [68 S.Ct. 763, 775 [15], 92 L.Ed. 986].)

In *Shelton* v. *United States* (C.A. 5, 1953), *supra*, 205 F.2d

---

[7]E.g., at preliminary federal proceedings before a committing magistrate a defendant who is unable to employ counsel is not entitled to assigned counsel. (Fed. Rules Crim. Proc. prescribed by the United States Supreme Court, 327 U.S. 825 et seq., 18 U.S.C.A., 1951 ed., rule 5 (b), rule 40 (b) (2), and note 2 of Advisory Committee on the Rules to rule 44.) The California magistrate, on the other hand, must assign counsel at the preliminary examination if defendant desires and is unable to employ counsel. (Pen. Code, § 859.)

806, 812-813, defendant elected to represent himself but asked appointment of an attorney to assist him "outside the court room . . . in preparing suggested charges to the jury, etc." and to "advise me during the trial." The district court ruled, "You are either going to be represented by counsel or you are going to represent yourself. . . . [T]he court is not going to appoint a lawyer and have him occupy an inferior position in the defense of your case." The Court of Appeals upheld this ruling and determined that the right of the accused to "the Assistance of Counsel for his defense" (U.S. Const., Amendment VI) does not include the right to court-appointed advisory counsel.

 We recognize that in the California courts, under our holding in the case at bar (as in the federal courts, under the holding in Shelton, *supra*), a defendant who insists upon representing himself and who can employ an attorney may secure a quantum or type of legal assistance greater than or different from that which must be accorded a defendant who is unable to employ an attorney and who insists upon representing himself, for a defendant who can find private counsel willing to accept employment in "an inferior position in the defense" *must* be allowed out-of-court consultation with such attorney. (See Pen. Code, § 825.) But the only reason the indigent does not have out-of-court consultation with an attorney is because he refuses to accept appointment of an attorney to represent him; i.e., to act within the traditional and statutory status of his office. This difference between the right to the aid of counsel of defendant's choice and the right to have counsel provided is not a denial of due process or equal protection.[8]

---

[8]E.g., in preliminary federal proceedings an accused is not entitled to assignment of counsel but he is entitled to employ counsel. (Fed. Rules Crim. Proc., cited *ante*, footnote 7.) And in a state prosecution federal due process accords defendant the "unqualified" right to be heard through his own counsel (*In re Groban* (1957), 352 U.S. 330, 332 [77 S.Ct. 510, 1 L.Ed.2d 376]; *Chandler* v. *Fretag* (1954), 348 U.S. 3, 9 [75 S.Ct. 1, 99 L.Ed. 4]), whereas a state's failure to furnish the services of an attorney to a defendant who is unable to employ his own counsel is not a denial of federal due process unless it leads to "fundamental unfairness" (*Uveges* v. *Pennsylvania* (1948), *supra*, 335 U.S. 437, 440-441; *Betts* v. *Brady* (1942), *supra*, 316 U.S. 455, 473).

In this state there is a similar difference between the right to employ counsel on appeal and the right to be furnished counsel on appeal, although such difference has little practical effect. The convicted California defendant, without a showing of probable cause, has a right of appeal if the prescribed procedural steps are timely taken. But the appellate court need not appoint counsel for the indigent defendant except where its independent investigation of the record shows that such

We are not saying that the trial court may not in its discretion, upon what it may determine to be good cause shown, permit a party who is represented by counsel to participate in the conduct of the case (see *ante,* footnote 3), or permit a defendant who appears in propria persona to employ an attorney to sit by him and advise him during the presentation of the case in court, or even appoint an attorney (with the latter's consent) to render such advisory services to an indigent defendant who wishes to represent himself (see e.g., *People* v. *Chessman* (1951), *supra,* 38 Cal.2d 166, 174 [2]). These matters are within the sound discretion of the trial judge, who is in a position to appraise the courtroom situation and determine what procedure will best promote orderly, prompt and just disposition of the cause. The court, however, should not permit a litigant both to have counsel and to actively participate in the conduct of the case (as by conducting examination of witnesses, interposing objections, arguing points of law or of fact, addressing the jury, etc.) unless the court on a substantial showing determines that in the circumstances of the case the cause of justice will thereby be served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed.

In the case at bar, defendant's conduct in propria persona in connection with the prosecution of his appeal confirms the conclusion that the superior court was justified in determining that his requests for the services of counsel prior to trial were not made with any real intention to accept sound advice. On appeal, although defendant has been diligently represented by court-appointed counsel, he has persisted in presenting documents in propria persona which reflect his misconceptions of and refusal to accept established rules of

---

appointment would be helpful to defendant or the court (*People* v. *Hyde* (1958), 51 Cal.2d 152, 154 [1] [331 P.2d 42]); see *Caritativo* v. *California* (1958), 356 U.S. 971 [78 S.Ct. 1133] [after the United States Supreme Court granted certiorari in a death penalty, *forma pauperis* case, and after counsel had briefed and argued the case for petitioner, counsel's request for his own appointment was denied by minute order ''for lack of a timely showing of a need for such appointment'']). Private counsel, on the other hand, so long as he complies with the procedural rules, can brief and argue an appeal which is a waste of time and substance for defendant, the People, and the court. But the court can dismiss, as irregular, sham, or frivolous, an appeal which has no proper appellate objective (*People* v. *Shorts* (1948), 32 Cal.2d 502, 516 [2b] [197 P.2d 330]) and the attorney who prosecutes such an appeal can be disciplined (Rules of Professional Conduct, rule 13; Bus. & Prof. Code, § 6077).

law. In these documents he asks that the record be "augmented" to include matters which are not of record below; he asserts that the record is erroneous in unspecified respects and in specified immaterial respects (rule 12 (b) of the Rules on Appeal provides that "If any material part of the record is incorrect in any respect . . . the reviewing court . . . may direct that it be corrected"); and he presents contentions which are without support in the record and contentions which were not made in the trial court. Furthermore, during the pendency of this appeal defendant has harassed this court with meritless *pro se* applications for writs attacking almost every step in the San Diego proceedings against him, beginning with unsupported complaints as to the prosecuting attorney's obtaining a requisition for defendant's extradition from Kentucky and ending with unsupported complaints as to the manner in which his court-appointed counsel presented the appeal. [27] The general rule that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case (*People* v. *Merkouris* (1956), *supra,* 46 Cal.2d 540, 554 [5]) applies to the filing of *pro se* documents on appeal (*Electric Utilities Co.* v. *Smallpage* (1934), 137 Cal.App. 640, 641-642 [31 P.2d 412]). Because of the undesirability of fruitlessly adding to the burdens of this court the time-consuming task of reading *pro se* documents which are not properly before us, and, if they be read, of consequently enlarging this opinion by a recountal and discussion of the contentions made in propria persona, such documents filed in this appeal by defendant should be stricken.

For the reasons above stated the documents filed in propria persona by defendant during the time when he has been represented by court-appointed counsel are stricken from the files and the judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Spence, J., and McComb, J., concurred.