Filed 6/28/22  P. v. Orozco CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C094549 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CR-FE-2009-0005953, SF111174A) |
| v. | |
| GERARDO A. OROZCO, | |
| Defendant and Appellant. | |

A jury found defendant Gerardo A. Orozco guilty of second degree murder in 2009.  Defendant now appeals the recent denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1]

Two separate appointed counsel for defendant have now filed two separate opening briefs setting forth the facts of the case and asking this court to review the record

---

[1] Further undesignated statutory references are to the Penal Code.

1

to determine whether there are any arguable issues on appeal (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*)); defendant has filed one supplemental brief.

As we next explain, we will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Statement of Facts*

The background facts are taken from our prior opinion in *People v. Orozco* (Jan. 4, 2012, C065146 [nonpub. opn.] (*Orozco*).[2]  Defendant and his codefendant Jose Jesus Gomez, both Norteño gang members, killed Juan Alberto Sanchez-Chavez.  The killing occurred when defendant, Gomez, and two others drove to a gas station after an evening of drinking beer.  Sanchez-Chavez, a Sureño gang member, encountered them at the station.  After the defendant and Gomez exchanged words with Sanchez-Chavez, the three men physically fought.  When Sanchez-Chavez fell to the ground, Gomez picked up a piece of wood and hit him in the head with it until it broke.  Defendant picked up a 36-pound rock and dropped it on Sanchez-Chavez.  Gomez picked up the victim's phone and then drove away with defendant and the other two men.  Gomez later tossed the phone away.  Sanchez-Chavez died four days later of severe traumatic brain injury due to blunt force trauma to his head.  (*Orozco, supra*, C065146.)

The prosecution charged defendant, Gomez, and one of the persons accompanying them each with murder, robbery, and active participation in a criminal street gang, along with several enhancements. (*Orozco, supra*, C065146.)

The trial court instructed the jury it could find defendant guilty of *first degree* murder (§ 187, subd. (a)) under one of two theories:  (1) if the murder was "willful, deliberate and premeditated"; or (2) under a theory of felony murder that while intentionally committing the robbery, defendant committed an act that caused the death

---

[2]  We granted defendant's motion (through counsel) to take judicial notice of our prior opinion in his case.

2

of a person. As to *second degree* murder, the trial court instructed the jury on the requirement that the prosecution prove malice but did not instruct on the doctrine of felony murder on that charge.

Defendant's jury found him guilty of second degree murder. It acquitted him of robbery, grand theft, and petty theft, and failed to reach verdicts on the gang charge or on any of the enhancement allegations on the murder charge. The court dismissed the gang charge and the enhancements and sentenced defendant to 15 years to life in prison for second degree murder. (*Orozco, supra*, C065146.)

On direct appeal, we affirmed defendant's conviction. (*Orozco, supra*, C065146.)

*Petition for Resentencing Under Section 1170.95*

Defendant filed a petition for resentencing pursuant to section 1170.95, which was enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437). His petition declared he met the requirements for relief and had been convicted of second degree murder. He also declared the prosecution asserted the theories of felony murder or murder under the natural and probable consequences doctrine to charge him with second degree murder, and alleged he could not now be convicted of second degree murder under the amendments to sections 188 and 189. He asked the court for appointed counsel.

The trial court did not appoint counsel for defendant and denied his petition by ex parte order. The court noted the jury had been instructed on the felony-murder rule only as to first degree murder. Based on the instructions, the court found defendant could not have been convicted under the felony-murder rule under any circumstances because the jury found him guilty of second degree murder and acquitted him of robbery--the basis for the felony murder theory here. The court also found the jury had not been instructed on the natural and probable consequences theory of murder. Thus, the court found defendant failed to establish a prima facie showing he was entitled to relief under section 1170.95.

3

Defendant timely appealed. Defendant's counsel filed the original brief on December 6, 2021, asking this court to determine whether there are any arguable issues on appeal, and defendant filed a supplemental brief. (*Wende*, *supra*, 25 Cal.3d 436.). The case was assigned to this panel shortly thereafter. We granted appellate counsel's motion to be relieved on January 3, 2022, and appointed the Central California Appellate Program (CCAP). We also granted CCAP's motion to strike the original *Wende* brief and file a new opening brief. CCAP filed a new brief again asking this court to determine whether there are any arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d 436.) Defendant did not file any further briefing. The case was fully briefed on June 22, 2022.

DISCUSSION

Counsel filed an opening brief setting forth the facts and procedural history of the case and requests this court review the record and determine whether there are any arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d 436.)

Defendant filed a timely supplemental brief asserting the trial court erred in not appointing counsel and summarily denying his petition rather than holding an evidentiary hearing, as, he argues, he had established a prima facie case for relief. He further asserts his conviction is based upon felony murder and malice was imputed to him based solely on his participation in the assault on the victim.

We first address the propriety of review. We note that whether the protections afforded by *Wende* apply to an appeal from an order denying a section 1170.95 petition is an open question. Our Supreme Court is set to resolve this issue in *People v. Delgadillo* (Nov. 18, 2020, B304441) [nonpub. opn.], review granted February 17, 2021, S266305.

We need not address the split in authority as to this issue; given that counsel has asked for review in the interests of justice and defendant has filed a supplemental brief, we exercise our discretion to review the case for error. (See *People v. Figueras* (2021) 61 Cal.App.5th 108, 113 [suggesting that even assuming no right to *Wende* protections, dismissal of appeal as abandoned not appropriate where defendant has filed a

4

supplemental brief], review granted May 12, 2021, S267870); *People v. Flores* (2020) 54 Cal.App.5th 266, 274 [although *Wende* review is not legally compelled on appeal from an order denying a § 1170.95 petition, an appellate court "can and should" independently review the record on appeal].)

As we next explain, we see no prejudicial error here.

Senate Bill No. 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended section 188 by adding a requirement that, except as stated in section 189, subdivision (e), all principals to murder must act with express or implied malice to be convicted of that crime. (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) It amended section 189 by adding a requirement to the felony-murder theory defendants who were not the actual killer or a direct aider and abettor to murder must have been a major participant in the underlying felony and acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3; § 189, subd. (e).)

As relevant here, Senate Bill No. 1437 also added section 1170.95, which provides a procedure by which those convicted of murder premised on either a felony murder or natural and probable consequences theory can petition for resentencing, if they could not now be convicted of first or second degree murder because of changes to section 188 or 189 by Senate Bill No. 1437. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).)

Upon receipt of the petition, the trial court must appoint counsel if requested, take briefing from the parties, and then determine whether the petitioner makes a prima facie showing they are entitled to relief. (§ 1170.95, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 960-961.) If the record of conviction establishes the petition lacks merit as a

matter of law, the court may deny the petition without conducting further proceedings. (*Lewis,* at p. 971.)

Defendant's petition for resentencing met the requirements for facial sufficiency and he requested counsel. Thus, the trial court erred in summarily denying his petition without appointing counsel and obtaining briefing. (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 960-961.) However, as we next explain, defendant cannot demonstrate prejudicial error here, because he was ineligible for resentencing as a matter of law, and the trial court's error was harmless unless the defendant can show " ' "it is reasonably probable that if [he] had been afforded assistance of counsel [his] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id.* at p. 974.)

As we have explained *ante*, defendant was found guilty only of second degree murder, and not guilty of robbery. His jury was instructed it could rely on the theory of felony murder only as to first degree murder, and only with robbery as the underlying felony; his jury found a lesser degree of murder and acquitted him of the robbery. The record further demonstrates the trial court did not instruct the jury on the natural and probable consequences theory of murder at any time. Thus, the record of defendant's conviction conclusively demonstrates he was not convicted of murder under the felony-murder rule or the theory of natural and probable consequences, but rather he was convicted of murder with malice aforethought; that is, based his own intent to kill--the only theory on which the jury was instructed as to second degree murder and the only theory on which his murder conviction *could have* been based. (§ 1170.95, subd. (a)(2); see *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056-1057, review granted Sept. 23, 2020, S263939, review dism. Nov. 17, 2021.)

Defendant was ineligible for resentencing as a matter of law, and the trial court's error was harmless.

6

Having further examined the record pursuant to *Wende*, we find no arguable error that would result in a disposition more favorable to defendant.[3]

## DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

/s/
_____
Duarte, J.

I concur:

/s/
_____
Mauro, J.

---

[3] While this case has been pending, the Legislature enacted Senate Bill No. 775 (2020-2021 Reg. Sess.) amending section 1170.95, subdivision (c) effective January 1, 2022. That amendment requires the trial court to "hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (Stats. 2021, ch. 551, § 2; § 1170.95, subd. (c).) Because we conclude, *ante*, defendant is not entitled to relief as a matter of law, the failure to hold this hearing or issue a statement is harmless. No other part of those amendments have any impact on our disposition of this appeal.

HULL, J., Concurring.

I concur in the result, but I do not agree with the majority's adoption of "*Wende*-like" procedures in appeals such as these.

While the majority does not decide the question, I am of the opinion that California's "*Wende* procedure" does not apply to appeals such as this one which is from a denial of postconviction relief. (*People v. Figueras* (2021) 61 Cal.App.5th 108, review granted May 12, 2021, S267870, (*Figueras*); *People v. Flores* (2020) 54 Cal.App.5th 266 (*Flores*); *People v. Cole* (2020) 52 Cal.App.5th 1023, review granted Oct. 14, 2020, S264278, (*Cole*).) This is so because this is not the defendant's first appeal as of right. (See, *In re Sade C.* (1996) 13 Cal.4th 952, 986 (*Sade C.*) [*Wende/Anders* review "mandated for only one [situation]—the indigent criminal defendant in his first appeal as of right"].)

In *Figueras*, this court said, quoting *Cole*, " . . . we 'reject the notion that the Constitution compels the adoption or extension of *Wende* procedures (or any subset of them) for appeals other than a criminal defendant's first appeal of right because, beyond that appeal, there is no right to the effective assistance of counsel. Time and again, the United States Supreme Court and our Supreme Court have rejected the very same argument. (See [*Pennsylvania* v.] *Finley* [(1987)] 481 U.S. [551,] 555; [*Conservatorship of*] *Ben C*. [(2007)] 40 Cal.4th [529,] 538–543; *Sade C., supra,* 13 Cal.4th at pp. 986–993.)' (*Cole, supra,* 52 Cal.App.5th at p. 1034, review granted; [*Flores, supra,*] 54 Cal.App.5th[ at p.] 271.)" (*Figueras, supra,* 61 Cal.App.5th at p. 111, review granted.) Thus, these courts held that the Constitution does not require "the adoption or extension" of *Wende* procedures to appeals from postconviction proceedings. I agree with this.

Nonetheless, the *Figueras* court decided, again following *Cole,* that in appeals such as these, due process requires that (1) appointed counsel must independently review the entire record and if counsel concludes there are no arguable issues on appeal file a

brief with the court saying so, (2) appointed counsel must inform the defendant that the defendant has the right file a supplemental brief, and (3) the court has a duty to address any issues raised by the defendant in a supplemental brief.

It is here that we part company.

In both *Cole* and *Figueras* the courts correctly decided the Constitution did not require an "adoption or extension" of *Wende* procedures to appeals seeking postconviction relief, but then, invoking their powers to control the proceedings before them, declared that due process required *Wende*-like procedures and the application of *Wende*-type procedures to appeals seeking postconviction relief. Neither court explains adequately why due process requires what are in practical measure *Wende* procedures in non-*Wende* appeals.

I agree that in the circumstances before us appointed counsel should independently review the record to decide whether there are any arguable issues on appeal and, if there are not, notify the court of counsel's determination. I do not agree that, in those circumstances, the appellate court is then required to conduct a review of the entire record searching for error or that counsel must advise the defendant of a "right" to file a supplemental brief. Nor do I agree the court has a duty to address issues raised solely by the defendant.

Once we hold that an appeal from a denial of postconviction relief is not subject to *Wende* review, we then have before us a "standard" appeal from an order denying postconviction relief in which the defendant, through counsel, has stated that there are no issues that properly can be raised on appeal. Under these circumstances, I would consider the appeal abandoned and dismiss the appeal.

I first address a requirement that the appellate court can or should or must review the record looking for error when the defendant's counsel has found none and has so declared.

2

In *Sade C.*, 13 Cal.4th 952, our supreme court considered whether the "prophylactic" procedures of *Anders v. California* (1967) 386 U.S. 738 and *People v. Wende* 25 Cal.3d 436 applied to an indigent parent's appeal from a judgment or order adversely affecting a parent's right to the custody of a child or the parent's status as a parent of the child. The Court concluded they did not.

While the context of the decision was slightly different in *Sade C.*, I find it instructive. As to a concern that that the risk of the absence of *Anders* (and, in my view, *Wende*) procedures will lead to an erroneous resolution of a parent's appeal, the Court said:

"As a practical matter, we believe that the chance of error is negligible. We do not ignore the fact that such error may be irremediable. (See, e.g., *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 868 [].) Nevertheless, our consideration of the many cases that have come before us on petition for review reveals that appointed appellate counsel faithfully conduct themselves as active advocates [on] behalf of indigent parents. This causes no surprise: the attorneys are enabled, and indeed encouraged, to effectively represent their clients by the procedural protections accorded them in the Court of Appeal, including the right to precedence over all other causes (Welf. & Inst. Code, § 395), which parallel those accorded them in the juvenile court (see, e.g., *In re Marilyn H.*[ (1993)] 5 Cal.4th [295,] 306-310). In accord is the experience of Division One of the Fourth Appellate District of the Court of Appeal, as it recently recounted in *In re Angelica V.* having applied the procedures in question for more than a decade under its holdings in *Brian B.* and *Joyleaf W.*, the court declared that 'we have discovered, to the best of our present recollection, no unbriefed issues warranting further attention.' (*In re Angelica V.*[ (1995)] 39 Cal.App.4th [1007,] 1015, italics added [holding the Court of Appeal would no longer apply *Wende* procedures to parental rights cases].) As a result, it judged the procedures 'unproductive' (*id*. at p. 1016), and overruled *Brian B.* and *Joyleaf W.*

3

". . . .[W]e believe that the requirement of fundamental fairness contained in the Fourteenth Amendment's due process clause does not compel imposition of *Anders's* 'prophylactic' procedures. Procedures that are practically 'unproductive,' like those in question, need not be put into place, no matter how many and how weighty the interests that theoretically support their use. To be sure, these procedures may have 'symbolic' value of some kind. (*Santosky v. Kramer*[, (1981)] 455 U.S. [745,] 764 [].) Such value, however, is too slight to compel their invocation." (*Sade C., supra,* 13 Cal.4th at pp. 990-991, fn. omitted.)

In my view, these observations apply equally to review of postconviction relief orders and the court is not required, in order to satisfy due process or otherwise, to review the record in these cases once counsel has stated that counsel can find no arguable issues on appeal or required to receive and resolve issues raised individually by the defendant.

I would add that, in my 24 years' experience at the Court of Appeal, after reviewing hundreds of supplemental briefs filed by defendants in *Wende* appeals, I have not found one that had any merit. But they each have required the court's staff attorneys and justices to spend additional time, and sometimes much additional time, addressing and resolving what are routinely, if not exclusively, frivolous arguments.

As to the view that these supplemental briefs are of right and require the court's resolution, I would also point to the following.

"The general rule that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case (*People v. Merkouris* (1956)[ ] 46 Cal.2d 540, 554 applies to the filing of *pro se* documents on appeal (*Electric Utilities Co. v. Small-page* (1934), 137 Cal.App. 640, 641-642)." (*People v. Mattson* (1956) 51 Cal.2d 777, 798 (*Mattson*).)

". . . .[T]here is no right – constitutional, statutory, or otherwise – to self-representation in a criminal appeal in California. (See *People v. Stanworth* (1969) 71 Cal.2d 820, 834–835[ ] [no right to dismiss counsel in capital appeals]; *People v.*

4

*Scott*[ (1998)] 64 Cal.App.4th [550,] 569 573[ ] [noncapital appeals].)  In particular, neither the Sixth Amendment nor the due process clause of the Fourteenth Amendment to the federal Constitution furnishes a basis for finding such a right.  (*Martinez*[ (2000)] 528 U.S. [152,] 160–163 [] [(*Martinez*)].)  As the United States Supreme Court recently explained, the sole constitutional right to self-representation derives from the Sixth Amendment, which pertains strictly to the basic rights that an accused enjoys in defending against a criminal prosecution and does not extend beyond the point of conviction.  (*Martinez,* [at pp.] 154, 160–161.)  Emphasizing that the change in one's position from 'defendant' to 'appellant' is a significant one, the high court found that the balance between a criminal defendant's interest in acting as his or her own lawyer and a state's interest in ensuring the fair and efficient administration of justice 'surely tips in favor of the [s]tate' once the defendant is no longer presumed innocent but found guilty beyond a reasonable doubt.  (*Id.* at p. 162.)  Consequently, the court concluded, states may exercise broad discretion when considering what representation to allow and may require an indigent inmate 'to accept against his will a state-appointed attorney' for representation on a direct appeal without violating the federal Constitution.  (*Martinez,* [at p.] 164.)

"As relevant here, represented capital inmates are not permitted to present their automatic appeals personally to this court.  That is, such inmates have no right personally to supplement or supersede counsel's briefs and arguments on the merits of their appeals.  (*Clark*[ (1992)] 3 Cal.4th [41,] 173 [(*Clark*)]; *Mattson, supra,* 51 Cal.2d at p. 798 [].)  As we explained in *Mattson*, pro se submissions pertaining to an appeal will not be filed or considered '[b]ecause of the undesirability of fruitlessly adding to the burdens of this court the time-consuming task of reading *pro se* documents which are not properly before us, and, if they be read, of consequently enlarging [the] opinion by a recountal and discussion of the contentions made in propria persona . . . .' (*Mattson, supra*, 51 Cal.2d at p. 798.)

5

"Thus, all appellate motions and briefs must be prepared and filed by counsel and may not be submitted pro se. (*Clark, supra*, 3 Cal.4th at p. 173.) Although we will accept and consider pro se motions regarding representation (i.e., *Marsden* motions to substitute counsel), such motions 'must be clearly labeled as such' and 'must be limited to matters concerning representation.' (*Clark,* [at p.] 173.) *Any other pro se document* offered in an appeal 'will be returned unfiled' (*ibid*.), or, if mistakenly filed, will be stricken from the docket (*Mattson, supra*, 51 Cal.2d at p. 798)." (*In re Barnett* (2003) 31 Cal.4th 466, 473-474, emphasis added.)

Although *Barnett* was a capital appeal, notably, the Supreme Court cited with approval *People v. Scott* and *People v. Mattson,* thus extending the same appellate rules to noncapital appeals.

Thus, in a non-*Wende* appeal such as this, the defendant, as an individual, does not have the right to submit his or her own arguments to the court for resolution.

I recognize that some courts have adopted a procedure that allows them to consider and decide an appellant's arguments raised in his or her own supplemental briefs by turning to the court's supervisory powers to control the proceedings before it. (See e.g., *Cole, supra,* 52 Cal.App.5th 1023, review granted.) I submit that those courts simply do not have the authority to do so given the California Supreme Court's holding in *Barnett*.

I recognize also that the issues we here consider are pending before our Supreme Court and the court may in the future extend what have become known as "*Wende* procedures" to appeals such as this one from orders denying postconviction relief. But it must be left up to that court to do so. Until it does, I would dismiss appeals such as the one presently before us.

_____/s/_____
Hull, Acting P.J.

7