[Crim. No. 13361.   Second Dist., Div. Two.   Jan. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. SAM LEWIS FULTON, Defendant and Appellant.

Daniel L. Dintzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Appellant.

HERNDON, J.—By the verdict of the jury in this case, appellant was found guilty of first degree murder. On this appeal from the judgment, appellant states his basic contentions as follows: (1) "The defendant was denied due process of law because the conviction against him was based upon evidence so unreliable that it was illegal as a matter of law;" and (2) "The judgment should be reversed or a new trial granted because the defendant was denied his constitutional right to the effective aid of counsel."

Our review has led us to the conclusion that the evidence of appellant's guilt is strong, convincing and entirely sufficient

to support the jury's finding that appellant shot and killed one Lawrence Gomez and that the murder was a wilful, deliberate, and premeditated killing with malice aforethought. Further, we hold that the record provides no support for appellant's contention that his trial counsel failed to provide him with competent and effective representation.

Lawrence Gomez, the victim of the murder, was the driver of a delivery truck for the Sparkletts Water Company. He was making deliveries on East 101st Street in Los Angeles about 4:30 in the afternoon of March 15, 1966. The witness Dorothy Blankenship, who resided in the vicinity, observed a group of young Negroes engaged in "rock and bottle throwing at passing cars." A few minutes later she heard a gunshot. She looked from her window and saw Gomez "slump over" and fall to the ground.

The witness Middie Jean Metoyer resided on 102d Street. She was able to observe the scene of the killing through a window of her residence. On the afternoon of the murder, her attention was called to appellant as he passed her house by one Charles Price, Jr. Price commented upon the fact that appellant was carrying a gun as he walked past the Metoyer home. Mrs. Metoyer testified that appellant had a small gun in his hand about the size of the .22 caliber Colt Derringer which had been identified and received in evidence as the murder weapon.

Approximately 30 minutes later while observing from the window, she saw the delivery man of the Sparkletts Water Company walking toward his truck. She saw six or seven "youngsters start toward him." Appellant was standing on the sidewalk. The delivery man "looked up." Appellant "pulled out a gun" and "fired two or three times" in the "direction of the water man." At the time appellant fired the gun, Mrs. Metoyer saw no other young men with guns.

On the same afternoon Freddie Lee Riggs, standing on the front porch of her home on 102d Street, heard "hollering and screaming." She heard someone say that "some boys were going to kill the Sparkletts Water man." About five minutes later she heard gunshots and ran in the direction from which they emanated. Running toward her were three or four boys. When she asked "what happened?" one answering appellant's description replied, "I killed that son-of-a-bitch."

The evidence establishes that one Dan Doyle was the owner

of the murder weapon. He and appellant were arrested at the same time as suspects in the case. It was stipulated at the trial that Doyle had been ordered to appear as a witness at appellant's preliminary hearing and that he had been "granted immunity from prosecution for anything he might say in that preliminary hearing by Judge Alarcon in the Superior Court." The record does not indicate that Doyle was ever formally charged with complicity in the Gomez murder.

Doyle testified at the trial that he had known the appellant about a year and that appellant had stayed overnight with him on the night of March 14, 1966. Doyle testified that he had acquired the murder weapon about a month previously and had kept it in his dresser drawer along with some ammunition. About 2:30 in the afternoon on March 15, 1966, Doyle and appellant went to a place on 103d Street where there were "a whole lot of people gathering around there, police and everything." Appellant said he was "going up where the peoples were." Doyle then left appellant and went to Anderson's Cafe at 97th and Bandera Streets. At about 5:30 p.m., appellant came to the cafe and said to Doyle, "I shot a dude, the water man" with "the gun over at your house." Doyle asked him where the gun was and appellant replied that he had left it at his cousin's house. Doyle told him to get it. Appellant left and returned about 30 minutes later with the gun. When Doyle asked appellant why he had shot the man, he received no answer.

Lewis Robinson, appellant's cousin, was at home with his son, Cleotha, on March 15, 1966. At about 5:15 p.m., appellant came to his house and handed him a gun similar in description to the murder weapon saying that he had shot a man. When Robinson asked "what for?" appellant replied that "he asked him for some water, and he didn't give it to him, and he shot him."

Cleotha Robinson heard appellant say he had "got him one" and had "shot a dude." Cleotha asked appellant "who" and appellant replied "a water man." Cleotha asked "why" and appellant answered that he had asked for a drink of water and the water man said, "Oh, you do." Appellant said that he then shot the man who "staggered and fell."

The record contains a very substantial amount of additional incriminating evidence which, for the purposes of this opinion, need not be recited in detail. Appellant himself took the witness stand and denied that he had done the shooting. He

testified to the effect that it was Doyle who killed Gomez. He testified that Doyle told him that he was a "juvenile" and that if he took the responsibility, he might get "probation" or "one year in county time" but that he, Doyle, being 22 years old, might be executed. Appellant said that he agreed and thereafter obtained the gun from his cousin at Doyle's request and gave it to him. Appellant admitted that when police arrested him and Doyle, he told the officers that he had shot the man. On cross-examination appellant admitted that "for no reason" he had told Lewis Robinson that he had shot the man.

We find no merit in appellant's argument to the effect that the testimony of the witness Doyle was so "unreliable" that as a matter of law it was legally inadmissible. Appellant cites no authority tending to support the contention that the stipulated fact that Doyle had been granted immunity for anything he might say at the preliminary hearing rendered his testimony at the trial inadmissible. In view of the unusual accumulation of other evidence sufficient to support the verdict of the jury, we are not confronted with any question as to whether or not Doyle's testimony, standing alone, would be sufficient to sustain the judgment.

Appellant argues this contention on the basis of the assumption that Doyle had been charged with appellant in the same accusatory pleading and on the basis of appellant's assertion that "another charge was still pending against him." These bases for appellant's argument are completely unsupported by the record. The only accusatory pleading found in the record accuses appellant alone. In short, the indicated motive which arguably might have caused Doyle to give false testimony was fully disclosed to court and jury. Manifestly, the existence of this motive would go only to the credibility of Doyle's testimony and not to its admissibility.

In arguing his contention that he was denied his constitutional right to the effective aid of counsel, appellant relies upon such decisions as *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Mattson,* 51 Cal. 2d 777 [336 P.2d 937], and *People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457], and their holdings to the effect an accused has been denied his right to a fair trial where the record shows that his trial counsel has displayed such lack of diligence and competence as to reduce the trial to a "farce or a sham."

The answer to this contention is that the instant record

contains nothing to justify the charge that the lawyer who represented appellant at the trial failed to provide him with competent and diligent representation. As we have indicated, defense counsel demonstrated no lack of competence in failing to urge upon the trial court the untenable objection that the testimony of the witness Doyle was inadmissible.

With respect to the credibility of the witness Doyle, the record affirmatively shows, and appellant concedes, that his trial counsel ''did make known to the Court and to the jury that the witness in question had an interest in the case because he had been granted immunity.'' The trial court adequately instructed the jury to the effect that a witness may be impeached and the presumption of his truthfulness may be overcome ''by contradictory evidence; by the manner of the witness on the stand; the degree of intelligence exhibited by him; the character of his testimony; by evidence showing his motive or interest in the outcome of the case or his bias or prejudice for or against one of the parties; by evidence that on some former occasion he made a statement or statements inconsistent with his present testimony; . . .'' Matters reasonably bearing upon the credibility of the witnesses were a proper subject of argument by counsel and for ultimate determination by the jury.

The judgment is affirmed, and the purported appeal from the order denying the motion for a new trial is dismissed.

Roth, P. J., and Fleming, J., concurred.