Filed 5/16/14  P. v. Silagi CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JARRIS JAY SILAGI,<br><br>    Defendant and Appellant. | B248087<br><br>(Los Angeles County<br>Super. Ct. No. SA082728) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elden S. Fox, Judge.  Affirmed.

Doreen B. Boxer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Jarris Jay Silagi of attempted second degree robbery (Pen. Code, §§ 664, 211)[1] (count 2). The jury found defendant not guilty of attempted grand theft from a person (§§ 664, 487, subd. (c)) (count 1). In a bifurcated trial, the jury found defendant had suffered three prior felony convictions within the meaning of section 667.5, subdivision (b). The trial court denied probation (pursuant to §1203, subd. (e)(4)), and sentenced defendant to a total term of five years in prison.

In this appeal, defendant contends that the trial court erred when it denied his request for self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). We readily conclude that defendant did not make an unequivocal request to represent himself, and therefore affirm the judgment of conviction.

## FACTUAL BACKGROUND

Because defendant does not challenge the sufficiency of the evidence to support the jury's verdict, we need only briefly recite the facts of the crime.

In August 2012, Francisca Cano Sanchez was seated in an outdoor patio at a restaurant in Beverly Hills. Defendant jumped over a railing and tried to grab Sanchez's cell phone from her hand. A restaurant employee pushed defendant back over the railing and held defendant on the ground to detain him until police arrived.

## THE RELEVANT PROCEEDINGS

After the jury was impaneled and the trial court read the initial instructions, the court addressed defendant outside the jury's presence. The court stated, "I do want to have a couple comments with you, Mr. Silagi. Your attorney has a very difficult job. She is representing you. She is going to be examining witnesses. She is going to be

---

[1]    All further statutory references are to the Penal Code.

presenting your defense in this case. If you have outbursts while you're seated here and make statements that these jurors can hear, it does not inure to your benefit. Do you understand what I mean by that? It's going to hurt your case. So if you have an issue with something, it's better that you speak to counsel quietly than say something in open court that the jurors may interpret adverse to you."[2] The court asked if defendant understood, and he replied, "All right." The trial court repeated, "Again, I remind you, she is going to do the best she can to defend you in this case, but outbursts are not going to help, okay?" Defendant again replied, "All right."

After taking a recess, the court reconvened and told defendant outside the jury's presence, "Mr. Silagi, again, I'll just caution you if you speak with your attorney, she certainly can assist in terms of any issues that you have with evidentiary objections, but by you blurting out things in front of the jury, it does not help your case. Understood?" Defendant began, "Well, if the D.A. —," but the court stated, "Mr. Silagi, I'm not debating with you. I'm just trying to . . . make sure you have a fair trial." Defendant interrupted the court, repeatedly saying, "I have a right to object." The court told defendant that his counsel was there to protect his constitutional rights and present his defense. "If you speak with her and you feel there's something objectionable, she certainly can make the legal objection if it's appropriate. Okay?" Defendant responded that he had the right to object. The court said, "You can do whatever you want, Mr. Silagi. I've told you my impressions, and I can only tell you from doing this for 30 years, defendants that don't cooperate in open court and do things in front of the jury usually don't end up with good results." Defendant said, "Okay."

When the jury returned, the prosecutor gave a brief opening statement. The court turned to defense counsel, but defendant blurted out, "Well, I'm going to make an opening statement because she doesn't even know what it is." The court said, "Excuse me. I told you to be quiet." Defendant replied, "Yes, Your Honor. I'm going to defend myself. I have a right to defend myself." The court asked defense counsel if she wanted

---

[2]     Apparently defendant had interrupted the proceedings during jury selection, but a transcription of these outbursts is not included in the record on appeal.

to make her opening statement.  Defendant said, "I'm making an opening statement for myself.  Your Honor?"  The court said, "One moment, Mr. Silagi.  I need you to calm down, okay?"  Defendant said, "Okay.  I'm making an opening statement for myself.  She doesn't even know.  She doesn't know.  She doesn't know. . . .  I'm making the opening statement."  The court warned defendant that if he continued he would be removed from the courtroom.  Defendant said, "I want to make my own opening statement because she doesn't even have an opening statement for me.  She doesn't even know I have one.  So I want to make my . . . .  I have a right to make my own opening statement, and that's what I want to do, Your Honor."  The court asked the jury to exit the courtroom for a moment, and they did so.

Turning to defendant, the court explained, "[Y]ou're represented by counsel.  Ms. Tryfman is your attorney.  She makes the opening statement.  She will question the witnesses.  She will also argue the case.  She has copies of the reports.  She's spoken to you about the case.  I'm going to give you a choice right now."  The court continued, "If you open your mouth again and insist on doing something that counsel's supposed to do, I'm going to absent you from the courtroom, and I'm going to allow Ms. Tryfman to proceed, I'm going to tell the jurors that you've requested by way of your actions not to be present during those portions of the case.  Do you want that to happen?"  Defendant responded, "She doesn't have the opening statement.  She has not talked to me like you said.  You said she talked to me.  She has not talked to me. . . .  I have no idea what my opening statement is."

The court asked defense counsel if she was prepared to make an opening statement, and she replied that she was.  Defendant said, "She has no opening statement, Your Honor, for me."  The court indicated defendant should be removed from the courtroom, and defendant said, "I have rights."  The court replied, "You'll have a right."  The following exchange ensued:

"The Defendant:  I just want to make my own opening statement.  May I have that right?

"The Court:  When you want to be quiet —

4

"The Defendant:  Do I have that right?

"The Court:  — you can come back.

"The [Defendant]:  I have the right to make my — do I have a right to make an opening statement —

"The Court:  No, you don't.

"The Defendant:  — for myself?

"The Court:  No, you don't sir.

"The Defendant:  If she does not — can I — she has my opening statement for me. Your Honor.  I have a right to make an opening statement for myself.

"The Court:  I want you to keep him up here, and as soon as he's ready to comply with the court's orders, I'll let him have a seat in the courtroom again.

"The Defendant:  She doesn't have one for me, Your Honor."

Defendant was removed from the courtroom and the jury returned.  The court informed the jury, "Mr. Silagi is not present for the opening statement.  Based on his conduct, he's voluntarily absented himself for this purpose.  You're not to consider that for any purpose as it relates to as we proceed in this matter, and hopefully we will proceed once we complete the opening statement which has nothing [to] do with Ms. Tryfman.  I ask that you pay attention to her opening statement."

Defense counsel made a brief opening statement.  The court asked the jury to step out for a moment and returned defendant to the courtroom.  The court addressed defendant:  "We're going to proceed with the first witness, Mr. Silagi.  I would like to have you present so that you can participate in this process with your counsel.  Help her in questioning if there's some questions you need asked.  I'll allow you to remain here as long as you do not interrupt the proceedings and work through your counsel.  Will you do that for me, sir?"  Defendant answered, "I have a right to object.  I have a right — I have the right to make an opening statement."  The court replied, "Okay.  I'm not going to debate with you.  You will remain in the courtroom.  We're going to proceed.  Bring the jurors and alternates back in, please."  Defendant said, "She's not prepared to do so."

5

Defense counsel said she was prepared, and defendant responded, "She has not spent adequate time with me." The trial then proceeded.

Defendant continued to interject frequently, objecting and commenting on witnesses' answers. During Sanchez's direct examination, defendant asked for readback of her answer. Initially the trial court was accommodating but defendant repeatedly demanded readbacks. The court told defendant he was not to tell the court reporter what to do, and indicated they would finish with direct examination, "then you can have your counsel ask questions." Defendant asked, "Your Honor, do I have a right to hear everything that has been said in this courtroom?" The court asked if he wanted to leave the courtroom again or hear the case. Defendant answered that he wanted to know if he had a right to hear. The court excused the jurors, then warned defendant that his right to be present was not absolute and that if he interrupted again, he would be removed. The court asked if he understood. Defendant responded, "No. I want to open my case." The court ordered defendant removed.

The court took a recess, then addressed defendant outside the jury's presence. The court told defendant, "if you conduct yourself by interrupting these proceedings, I have a right to order that you remain outside the courtroom, meaning in the lockup, and the case proceeds without you being present. I don't want to do that. I want you to be here so you can hear everything that's testified to. So I'm going to remind you again, if you have a concern about an answer or a question that's being asked, consult with your attorney and she can clarify that because she's going to have the chance to question the witness also. Do you understand what I've said?" Defendant replied, "Well, I don't feel that my — being my representation is as good as I want it to be, you know what I'm saying? And I feel there's many doubts, you know, but —" The court expressed its opinion that defense counsel "is doing a very good job in representing you, and the charges in this matter have some specific elements, and she is presenting a defense by examining witnesses that raises issues as to those elements. So I suggest you let your attorney who is very qualified and has tried many cases help you in this case because what you're doing in front of the jury is not helping you. Do you understand that?" Defendant said, "Your

6

Honor, I understand niceties. I understand that, you know, these are professional people in here, you know. I just want my rights. I want just — I want to have the right. I want to exercise my rights. I'm innocent." The court said defendant *was* exercising his rights, including the right to counsel and to have the jury decide his guilt or innocence. "But unless you're going to let your attorney do what she does best which is defend people charged with crimes, then you're going to put yourself in a position that someone who watches you keep interrupting is going to get upset with you and that may affect their verdict in this case. Do you understand that?" Defendant said he did, but reiterated, "I want to exercise my right to hear everything that was said after she said, 'and then the cops came.'" The court indicated counsel would get to that, but defendant indicated he wanted to hear it immediately. The court told defendant he needed to be quiet and not interrupt anymore, and ordered the jurors returned to the courtroom. As they were returning, defendant asked if he could have an answer to the question. The court called a lunch recess.

When the trial resumed, defendant again asked if he had the right to hear the answer to the question. The court attempted to continue with the trial but when defendant persisted the court had him removed. The court addressed the jury: "The record will reflect the defendant has been removed from the courtroom. The court finds that by his actions and interruptions of the process he has voluntarily absented himself from these proceedings at this stage."

After the parties rested, defendant reentered the courtroom outside of the jury's presence, and remained during the rest of the trial. He spoke out during the prosecutor's closing argument and again while the court was reading the jury instructions.

After the jury returned its verdict, defendant continued to obstruct the proceedings. Defendant announced he wanted to file state and federal charges against the jury, the court, the prosecutor, and his counsel. He was removed from the courtroom during the bifurcated jury trial on his prior convictions because of his repeated outbursts.

During the sentencing hearing, the court stated, "I think it's apparent to anyone that's been involved in this trial that Mr. Silagi, although legally competent, certainly

7

suffers from some serious psychiatric issues." Defendant continued to speak out, saying, "I wanted my justice," and "This is illegal sentencing right here." He asked if he had a right to free speech and a right to defend himself. The court said he had a right to free speech to the extent he did not interrupt the court. The court sentenced defendant to a term of five years.

This timely appeal followed.

## DISCUSSION

Defendant contends on appeal that the trial court erred when it denied his request to represent himself. We conclude that he did not unequivocally request self-representation and therefore reversal of his conviction is not warranted. Although defendant expressed dissatisfaction with aspects of his counsel's representation, at no time did he request self-representation or even substitution of counsel. At most, he tried to insist he had the right to speak when he wanted to speak during the proceedings. Criminal defendants do not have an absolute right to speak when they want, and the record makes clear the court did not abuse its discretion by not allowing defendant to serve as cocounsel. We find no error and affirm the judgment.

As part of the Sixth Amendment right to counsel, a defendant has a right to self-representation if the request is timely, unequivocal, and made after a knowing and intelligent waiver of the right to counsel. (*Faretta*, *supra*, 422 U.S. 806, 819; *People v. Koontz* (2002) 27 Cal.4th 1041, 1069.)

Here, after the prosecutor gave an opening statement, defendant tried to insist on making his own opening statement, saying, "Well, I'm going to make an opening statement because she doesn't even know what it is." The court said, "Excuse me. I told you to be quiet." Defendant replied, "Yes, Your Honor. I'm going to defend myself. I have a right to defend myself."

On appeal, defendant contends that this exchange constituted an unequivocal request for self-representation. We disagree. Defendant did not express that he wanted

to discharge his counsel and represent himself, or "go pro. per." Nothing in the record suggests that the trial court, or even defendant's own counsel, interpreted his comments as being a request for self-representation under *Faretta*, *supra*, 422 U.S. 806.

The case of *People v. Danks* (2004) 32 Cal.4th 269 (*Danks*) is instructive. At two pretrial hearings, defendant referred to "going pro. per." At the second hearing, following a lengthy discussion of defendant's *Marsden*[3] motion, the defendant stated, "'I want a trial. *I want to defend myself and go pro. per. If I'm not allowed to go pro. per.*, I would at least like to be cocounsel to where I could sit there, maybe I could just take the stand and tell 'em, the jury exactly what happened on this incident.'" (*Id.* at p. 295.) On appeal, defendant contended the trial court erred in denying his motion for self-representation. The appellate court held that, in the context in which they were made, the defendant's "references to self-representation were equivocal, born primarily of frustration regarding the granting of counsel's requests for continuances and his desire to avoid further psychiatric examination." (*Id.* at p. 296; see also p. 297.)

Similarly, in *People v. Marlow* (2004) 34 Cal.4th 131, 147 (*Marlow*), the defendant inquired, "'Is it possible that I just go pro[.] per[.] in my own defense and have someone appointed as co-counsel?'" The Supreme Court deemed the defendant's comments to be a mere inquiry, not an unequivocal assertion of the right to self-representation. The court held that the defendant's question "was a request for information, not a *Faretta* motion," and stated that the fact "the trial court went on to 'decline to do that at this particular time' did not convert defendant's inquiry into a motion." (*Ibid.*; fn. omitted.)

In this case, defendant's remarks in the trial court were far more equivocal than those rejected as insufficient invocations of the right to self-representation in *Danks* and *Marlow*. In the case before us, there was no reference in defendant's comments to *self*-representation. There was no request to discharge or replace his attorney. He said he wanted to "defend" himself, but in context he was using that term to mean that he wanted

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

to protect his interests by speaking whenever he wanted to speak, rather than seeking to serve as his own attorney.[4]  Although he was dissatisfied with counsel's plan regarding an opening statement, and continued at other times during the trial to request to make his own evidentiary objections and have evidence repeated, he never indicated he wanted to represent himself.  Because defendant failed to make an unequivocal request for self-representation, there was no Sixth Amendment error as defendant claims on appeal.

A defendant has no right, under either the federal or state Constitution, to "hybrid representation."  As stated in *People v. Moore* (2011) 51 Cal.4th 1104, 1119-1120, footnote 7 (*Moore II*):  "[B]y hybrid representation we mean one of three arrangements involving the presence of both *a self-represented defendant* and a defense attorney: (1) standby counsel, in which the attorney takes no active role in the defense, but attends the proceedings so as to be familiar with the case in the event that the defendant gives up or loses his or her right to self-representation; (2) advisory counsel, in which the attorney actively assists the defendant in preparing the defense case by performing tasks and providing advice pursuant to the defendant's requests, but does not participate on behalf of the defense in court proceedings; and (3) cocounsel, in which the attorney shares responsibilities with the defendant and actively participates in both the preparation of the defense case and its presentation to a degree acceptable to both the defendant and the attorney and permitted by the court.  A second major category of hybrid representation . . . occurs *when a criminal defendant who has chosen to accept the assistance of counsel* is permitted to serve as cocounsel to his or her attorney.  In such cases, the attorney retains control of the tactical choices to be made, and the defendant participates only to the extent permitted by counsel and the court."  (Italics added.)

It is the second category of hybrid representation that is at issue in the case before us.  In any event, "'[N]one of the "hybrid" forms of representation, whether labeled "cocounsel," "advisory counsel," or "standby counsel," is in any sense constitutionally

---

**4**      We note that during sentencing he repeated this usage of the word, asking the court if he had a right to "defend" himself.

10

guaranteed.' (*People v. Bloom* [(1989)] 48 Cal.3d 1194, 1218.)" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1368.)

"Criminal defendants have the constitutional right to have an attorney represent them, and the right under the federal Constitution to represent themselves, but these rights are mutually exclusive. (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 183 . . . ; *People v. Marlow*[, *supra*,] 34 Cal.4th 131, 147, fn. 6; *People v. Clark* (1992) 3 Cal.4th 41, 111 . . . ; *People v. Bloom*[, *supra*,] 48 Cal.3d 1194.)" (*Moore II*, *supra*, 51 Cal.4th at pp. 1119-1120.) Thus, "[a] defendant has no absolute right to participate in the presentation of his case when he is represented by counsel. (*People v. Mattson* (1959) 51 Cal.2d 777, 789.) Indeed, the decision whether to confer on a defendant cocounsel status is within the sound discretion of the trial court which 'should not permit a litigant both to have counsel and to actively participate in the conduct of the case . . . unless the court on a substantial showing determines that in the circumstances of the case the cause of justice will thereby be served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed.' (*Id.*, at p. 797.)" (*People v. Moore* (1988) 47 Cal.3d 63, 77-78 (*Moore I*).)

It is unclear whether defendant in the case before us wished to act as cocounsel throughout his trial. It seems he simply wished to speak out whenever he desired. His conduct was disruptive and defiant, and repeatedly hindered the orderly conduct of the proceedings. There is no doubt that the cause of justice would not have been served by permitting defendant to speak out whenever he wished to speak out. The trial court was respectful toward defendant and protective of his right to a fair trial, but also properly ensured that the progress of the trial was not unduly impeded by defendant's outbursts. We conclude the court exercised proper discretion in refusing to grant him de facto cocounsel status.

11

## DISPOSITION

The judgment of conviction is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


EDMON, J.*

We concur:


EPSTEIN, P. J.


WILLHITE, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.