Filed 6/28/22  P. v. Ortega CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR ANTHONY ORTEGA,<br><br>    Defendant and Appellant. | C095041<br><br>(Super. Ct. No. 08F07509) |

This appeal comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436.

In 2010, a jury found defendant Victor Anthony Ortega guilty of first degree murder and found true the allegation he personally and intentionally discharged a firearm causing death or injury.  Sentenced to 50 years to life in prison, defendant appeals the trial court's order entered at his October 2021 hearing, held pursuant to *People v. Franklin* (2016) 63 Cal.4th 261, denying him the right to self-representation under *Faretta v. California* (1975) 422 U.S. 806.  He also purports to appeal the denial of his separate July 2021 motion to modify his restitution fine.

1

Appointed counsel for defendant filed an opening brief setting forth the facts of the case and asking this court to review the record to determine whether there are any arguable issues on appeal. Defendant filed two supplemental briefs, arguing the trial court erred in declining to allow him to represent himself at the *Franklin* hearing and also erred in not "resentencing" him at that hearing, adding that his counsel was ineffective; he also raises multiple arguments concerning his original murder conviction as well as his Penal Code[1] section 1170.95 petition, which was previously denied by the trial court and is now pending in our Supreme Court.

We shall affirm the trial court's orders entered at the *Franklin* hearing.

We shall dismiss the remainder of defendant's claims, for reasons we explain *post*.

BACKGROUND

During a fight with the victim and another, defendant shot and killed the victim. (*People v. Ortega* (Apr. 10, 2012, C065027 [nonpub. opn.].)[2] In April 2012, we affirmed the judgment on appeal. (*Ortega*, *supra*, C065027.) That judgment became final later in 2012, after the denial of defendant's petition for review to the Supreme Court. Since that

---

[1] Further undesignated statutory references are to the Penal Code.

[2] On our own motion, we take judicial notice of our opinion affirming the judgment of conviction and sentence on direct appeal. (Evid. Code, §§ 459, subd. (a) ["The reviewing court may take judicial notice of any matter specified in Section 452"], 452, subd. (d) [permitting a court to take judicial notice of records of "any court of this state"].) We also take judicial notice of the numerous appeals filed by defendant in his case: *People v. Ortega*, case No. C091229 [motion to modify or strike restitution fine; dismissed as nonappealable order]; *People v. Ortega*, case No. C092671 [motion for resentencing under § 1170.95; dismissed as abandoned, review granted May 12, 2021, pending *People v. Delgadillo*, S266305]; *People v. Ortega*, case No. C093824 [motion to modify restitution fine and fees; dismissed as nonappealable order]; *People v. Ortega*, case No. C094166 [motion to modify or strike restitution fine and three other motions; dismissed as nonappealable order]; *In re Victor Anthony Ortega on Habeas Corpus*, case No. C093587 [ineffective assistance of counsel at trial; petition denied].)

time, defendant has filed six appeals and one petition for habeas corpus purporting to challenge various aspects of the judgment in this case.

Of those, one is relevant here. In case No. C092671, defendant appealed the trial court's September 1, 2020, denial of his petition seeking to be resentenced pursuant to section 1170.95. After his counsel filed a *Wende* brief, this court dismissed that case as abandoned. Defendant filed a petition for review in the Supreme Court, which was granted on May 12, 2021. The Supreme Court deferred consideration of the matter pending the disposition of another case; defendant's appeal from that postjudgment order remains pending in the Supreme Court.

On July 30, 2021, defendant filed a new motion in the trial court challenging his restitution fine and other fees not relevant here. The trial court dismissed the motion as to the restitution fine, recognizing it lacked jurisdiction to modify that fine. Defendant purported to appeal that dismissal.

On a parallel track, in August 2021, defendant submitted a packet of information to the trial court pursuant to *Franklin* and section 3051 for the parole board to consider at a future parole hearing. The trial court held the *Franklin* hearing on October 8, 2021; defendant was personally present. At that hearing, the court stated: "I read through your packet [defense counsel], and I want to commend you for the thoroughness of it. You and your investigator have gone through a lot of work on behalf of [defendant], and it shows in the thoroughness and completeness of your investigation. I want to commend you on behalf of your client." The prosecution echoed the court's sentiments and agreed to everything that was submitted. The trial court ordered the packet be forwarded to the Department of Corrections and Rehabilitation for future consideration.

As the hearing was ending, defense counsel stated, "Your honor, Mr. Ortega is requesting to proceed pro per." The trial court responded, "We are done. We are done, Mr. Ortega. Thank you." Defendant filed a timely notice of appeal from that postjudgment order, and raises several claims related thereto in his supplemental filings.

3

DISCUSSION

I

Wende *Review*

We consider both appeals together in this case.

Counsel filed an opening brief setting forth the facts and procedural history of the case and requested this court review the record and determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. He has filed two briefs we will discuss below.

Our Supreme Court has not yet addressed whether the protections afforded by *Wende* and *Anders v. California* (1967) 386 U.S. 738 apply to an appeal from postjudgment orders. (*People v. Serrano* (2012) 211 Cal.App.4th 496, 503; *People v. Freeman* (2021) 61 Cal.App.5th 126, 132-133.) "Published decisions by our courts of appeal uniformly agree that *Wende/Anders* does not require independent review of appeals from postjudgment orders in criminal proceedings, though they are split on whether in certain contexts a court should nonetheless exercise discretion independently to review a summary denial." (*Freeman*, at p. 133.)

Although we agree that *Wende* appeals from postjudgment orders should routinely be dismissed as abandoned if defendant does not file a supplemental brief, where defendant *has* submitted a supplemental brief, the appeal has not been abandoned. Specific issues have been raised, and those issues are properly decided. (See *People v. Freeman*, *supra*, 61 Cal.App.5th at p. 134.) We acknowledge this view has been criticized (see *People v. Scott* (2020) 58 Cal.App.5th 1127, 1132-1135, review granted Mar. 17, 2021, S266853), but note that even the majority in the *Scott* case opined an appellate court should address those contentions where the defendant filed a timely supplemental brief. (*Id.* at p. 1134.) We understand our dissenting colleague disagrees with this view, see *People v. Weisner* (2022) 77 Cal.App.5th 1072, 1077, but respectfully

4

submit that where, as here, appointed counsel explicitly advises a defendant that they are now on their own and must raise their own points, if any, on appeal, we should consider those issues raised, even though defendant remains technically represented by counsel. For this reason and those set forth in the dissenting opinion in *Weisner*, at page 1079, we shall consider defendant's arguments here.

## II

### *Cognizability of Issues Raised in Defendant's Briefing*

Defendant argues the trial court erred in not allowing him to represent himself at the *Franklin* hearing. He adds several claims regarding his right to resentencing at the *Franklin* hearing or upon the hearing of his motion to modify his fine and fees, and alternatively argues his counsel was ineffective for not asking the prosecutor to recommend resentencing or directly asking the trial court for resentencing at the *Franklin* hearing.[3]

Defendant also raises claims about his original trial; he argues that he is entitled to a new trial, that the jury should have been apprised of his mental health condition, and that the contents of his *Franklin* packet demonstrate his trial counsel and original appellate counsel provided him with ineffective assistance. In his second filing, he appears to claim the trial court erred in denying his subsequent section 1170.95 petition and mentions the court's denial of his motions to strike restitution, to strike his gun enhancement, to disqualify the trial judge, and to suppress a pretrial identification at trial.

Defendant thus asks us to review three types of claims. First, he requests us to rule on issues related to his initial trial, including his initial sentencing and desire for a resentencing hearing unrelated to section 1170.95. But his judgment is long since final.

---

[3] Defendant's statements regarding his *Franklin* attorney's conduct are contradictory. He states his attorney said they would ask the prosecutor and the court to reconsider his sentence, but later states his attorney told him that they would *not* ask for this relief.

5

Second, defendant seeks review of the trial court's denial of his section 1170.95 petition; this postjudgment order is currently before the Supreme Court and we do not have jurisdiction to address any claims challenging any aspects of the order.

Third, defendant raises issues regarding his *Franklin* hearing. We conclude the orders made at the *Franklin* hearing are the only orders properly before us, and shall address defendant's claims and affirm the challenged orders.

A. *Claims Related to the Final Judgment*

Turning first to the claims related to his original trial, defendant raises challenges based on evidence not presented to the jury, the denial of trial motions, his trial and appellate counsels' effectiveness, and sentencing issues. As we explained *ante*, defendant's judgment after trial was affirmed on appeal and became final in 2012. "[A] judgment becomes final ' "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed." ' [Citations.] Once that process ends, the judgment may be challenged on collateral review. Merely filing a collateral attack does not make the judgment nonfinal." (*People v. Padilla* (2022) 13 Cal.5th 152, 162.)

Defendant's many claims of error related to his original trial are long final, and are not cognizable on this appeal. These claims must be dismissed. This is also the situation with defendant's challenges to his current sentence, the restitution ordered, the gun enhancement, and his request for resentencing under section 1170, subdivision (d). The trial court had no jurisdiction to address these claims, and neither do we.

B. *Section 1170.95 Petition*

We next turn to defendant's claim pertaining to his section 1170.95 petition, which is not cognizable here because of defendant's appeal currently pending in the Supreme Court. An appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court. (*Anderson v. Superior Court of Solano County* (1967) 66 Cal.2d 863, 865.) "Pending the appeal the superior court has no

6

jurisdiction to vacate the judgment or make any order affecting it." (*People v. Sonoqui* (1934) 1 Cal.2d 364, 366.)

In the case currently before the Supreme Court, defendant sought to vacate his first degree murder conviction and to be resentenced under section 1170.95. The trial court rejected this petition; we dismissed his subsequent appeal as abandoned. The Supreme Court granted review, and the case remains pending.

To the extent defendant's appeal can be construed to raise any issues that have anything to do with his section 1170.95 petition, those issues are not cognizable before this court because they are within the subject matter of the order currently on review at the Supreme Court. We dismiss those claims as well.

C. *Claims Related to Defendant's* Franklin *Hearing*

The denial of the *Franklin* hearing resulted in an appealable postjudgment order; claims related to that hearing are properly before us on this appeal.

Under section 3051, the parole board is required to conduct a "youth offender parole hearing" during the 15th, 20th, or 25th year of the offender's incarceration. In *People v. Franklin, supra*, 63 Cal.4th at pages 268-269, the Supreme Court provided for a proceeding that allows a youthful defendant to make a record of mitigating evidence tied to his youth. At that hearing, a youthful offender is entitled to "place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Id.* at p. 284.)

1. *Faretta Motion*

Defendant contends the trial court erred when it denied his request to represent himself at the *Franklin* hearing. We disagree. Although the trial court did not expressly discuss the relevant factors in denying defendant's untimely motion, the record

demonstrates the court had those factors in mind in making its ruling and those factors supported denial of his motion.

"[I]n order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial." (*People v. Windham* (1977) 19 Cal.3d 121, 127-128, fn. omitted.) An untimely *Faretta* motion is left to the sound discretion of the trial court. (*Windham*, at p. 128.) In ruling on the motion, "the trial court shall inquire sua sponte into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Ibid*.)

"[W]hile the trial court may not have explicitly considered each of the *Windham* factors, there were sufficient reasons on the record to constitute an implicit consideration of these factors." (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1206.) First, the *Faretta* motion was made for the first time after the business of the *Franklin* hearing had been completed and the court ordered the packet to be submitted to the Department of Corrections and Rehabilitation. Defendant was present in court during the entire hearing as the court and counsel discussed the contents of his *Franklin* packet. Defendant responded to the court's greeting, but made no other statements. The court was cognizant of the quality of defendant's counsel's representation; it commented favorably on the content and thoroughness counsel put into the *Franklin* packet submitted and went out of its way to commend counsel on the quality of the work.

In terms of the motion's timing, the postjudgment hearing had successfully concluded and no further action was necessary or appropriate.

8

Further, the record demonstrates no reason proffered for defendant's request to represent himself. Defendant did not attempt to provide a reason to the trial court. Defendant's supplemental brief suggests the reasons he sought to represent himself were to seek a new trial, to seek resentencing, or to declare his trial counsel and appellate counsel ineffective. As noted *ante*, the purpose of a *Franklin* hearing is limited. None of defendant's reasons for seeking new counsel fall within the limited nature of the issues that may be entertained during a *Franklin* hearing, nor could the trial court provide any relief on these subjects.

The trial court could have reasonably expected disruption of its proceedings as well as delay due to the late timing of this request after the business of this particular hearing was completed. Thus, we conclude the trial court did not err in denying defendant's untimely *Faretta* motion.

2. *Ineffective Assistance of Counsel*

Defendant also argues that his counsel was ineffective at the *Franklin* hearing because counsel did not obtain and include a "psych[ological] report" in the packet.

To establish ineffective assistance of counsel, a defendant must show counsel's performance was "deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) A defendant must also show "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Ibid.*) On review, the "court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*Ibid*.) Reversal is appropriate only if: "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid*.) All other ineffective assistance of counsel claims "are more appropriately resolved in a habeas corpus proceeding." (*Ibid*.)

9

Here, the record establishes the trial court found counsel did a commendable job of gathering the facts and documents necessary for defendant's future parole hearings. Defendant has not demonstrated how failing to add another report to this assembly was objectively deficient, nor has he established how this caused him prejudice. Further, this record does not affirmatively disclose counsel had no rational tactical purposes for selecting the documentation and evidence submitted, or that there is no satisfactory explanation for his actions. Indeed, defendant states counsel gave him a legitimate tactical reason--there was no reason to add a report like this to a packet already containing the same information.

Having further examined the record pursuant to *Wende*, we find no arguable error during the course of the *Franklin* hearing that would result in a disposition more favorable to defendant.

## DISPOSITION

The trial court's orders entered at the *Franklin* hearing are affirmed. All other claims are dismissed, as described by this opinion.


_____/s/_____
Duarte, J.


I concur:


_____/s/_____
Renner, J.


10

HULL, J., Concurring.

I concur in the result, but I do not agree with the majority's adoption of "*Wende*-like" procedures in appeals such as these.

While the majority does not decide the question, I am of the opinion that California's "*Wende* procedure" does not apply to appeals such as this one which is from a denial of postconviction relief. (*People v. Figueras* (2021) 61 Cal.App.5th 108, review granted May 12, 2021, S267870, (*Figueras*); *People v. Flores* (2020) 54 Cal.App.5th 266 (*Flores*); *People v. Cole* (2020) 52 Cal.App.5th 1023, review granted Oct. 14, 2020, S264278, (*Cole*).) This is so because this is not the defendant's first appeal as of right. (See, *In re Sade C.* (1996) 13 Cal.4th 952, 986 (*Sade C.*) [*Wende/Anders* review "mandated for only one [situation]—the indigent criminal defendant in his first appeal as of right"].)

In *Figueras*, this court said, quoting *Cole*, " . . . we 'reject the notion that the Constitution compels the adoption or extension of *Wende* procedures (or any subset of them) for appeals other than a criminal defendant's first appeal of right because, beyond that appeal, there is no right to the effective assistance of counsel. Time and again, the United States Supreme Court and our Supreme Court have rejected the very same argument. (See [*Pennsylvania* v.] *Finley* [(1987)] 481 U.S. [551,] 555; [*Conservatorship of*] *Ben C*. [(2007)] 40 Cal.4th [529,] 538–543; *Sade C., supra,* 13 Cal.4th at pp. 986–993.)' (*Cole, supra,* 52 Cal.App.5th at p. 1034, review granted; [*Flores, supra,*] 54 Cal.App.5th[ at p.] 271.)" (*Figueras, supra,* 61 Cal.App.5th at p. 111, review granted.) Thus, these courts held that the Constitution does not require "the adoption or extension" of *Wende* procedures to appeals from postconviction proceedings. I agree with this.

Nonetheless, the *Figueras* court decided, again following *Cole,* that in appeals such as these, due process requires that (1) appointed counsel must independently review the entire record and if counsel concludes there are no arguable issues on appeal file a

1

brief with the court saying so, (2) appointed counsel must inform the defendant that the defendant has the right file a supplemental brief, and (3) the court has a duty to address any issues raised by the defendant in a supplemental brief.

It is here that we part company.

In both *Cole* and *Figueras* the courts correctly decided the Constitution did not require an "adoption or extension" of *Wende* procedures to appeals seeking postconviction relief, but then, invoking their powers to control the proceedings before them, declared that due process required *Wende*-like procedures and the application of *Wende*-type procedures to appeals seeking postconviction relief. Neither court explains adequately why due process requires what are in practical measure *Wende* procedures in non-*Wende* appeals.

I agree that in the circumstances before us appointed counsel should independently review the record to decide whether there are any arguable issues on appeal and, if there are not, notify the court of counsel's determination. I do not agree that, in those circumstances, the appellate court is then required to conduct a review of the entire record searching for error or that counsel must advise the defendant of a "right" to file a supplemental brief. Nor do I agree the court has a duty to address issues raised solely by the defendant.

Once we hold that an appeal from a denial of postconviction relief is not subject to *Wende* review, we then have before us a "standard" appeal from an order denying postconviction relief in which the defendant, through counsel, has stated that there are no issues that properly can be raised on appeal. Under these circumstances, I would consider the appeal abandoned and dismiss the appeal.

I first address a requirement that the appellate court can or should or must review the record looking for error when the defendant's counsel has found none and has so declared.

2

In *Sade C.*, 13 Cal.4th 952, our supreme court considered whether the "prophylactic" procedures of *Anders v. California* (1967) 386 U.S. 738 and *People v. Wende* 25 Cal.3d 436 applied to an indigent parent's appeal from a judgment or order adversely affecting a parent's right to the custody of a child or the parent's status as a parent of the child. The Court concluded they did not.

While the context of the decision was slightly different in *Sade C.*, I find it instructive. As to a concern that that the risk of the absence of *Anders* (and, in my view, *Wende*) procedures will lead to an erroneous resolution of a parent's appeal, the Court said:

"As a practical matter, we believe that the chance of error is negligible. We do not ignore the fact that such error may be irremediable. (See, e.g., *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 868 [].) Nevertheless, our consideration of the many cases that have come before us on petition for review reveals that appointed appellate counsel faithfully conduct themselves as active advocates [on] behalf of indigent parents. This causes no surprise: the attorneys are enabled, and indeed encouraged, to effectively represent their clients by the procedural protections accorded them in the Court of Appeal, including the right to precedence over all other causes (Welf. & Inst. Code, § 395), which parallel those accorded them in the juvenile court (see, e.g., *In re Marilyn H.*[ (1993)] 5 Cal.4th [295,] 306-310). In accord is the experience of Division One of the Fourth Appellate District of the Court of Appeal, as it recently recounted in *In re Angelica V.* having applied the procedures in question for more than a decade under its holdings in *Brian B.* and *Joyleaf W.*, the court declared that 'we have discovered, to the best of our present recollection, no unbriefed issues warranting further attention.' (*In re Angelica V.*[ (1995)] 39 Cal.App.4th [1007,] 1015, italics added [holding the Court of Appeal would no longer apply *Wende* procedures to parental rights cases].) As a result, it judged the procedures 'unproductive' (*id.* at p. 1016), and overruled *Brian B.* and *Joyleaf W.*

". . . .[W]e believe that the requirement of fundamental fairness contained in the Fourteenth Amendment's due process clause does not compel imposition of *Anders's* 'prophylactic' procedures. Procedures that are practically 'unproductive,' like those in question, need not be put into place, no matter how many and how weighty the interests that theoretically support their use. To be sure, these procedures may have 'symbolic' value of some kind. (*Santosky v. Kramer*[, (1981)] 455 U.S. [745,] 764 [].) Such value, however, is too slight to compel their invocation." (*Sade C., supra,* 13 Cal.4th at pp. 990-991, fn. omitted.)

In my view, these observations apply equally to review of postconviction relief orders and the court is not required, in order to satisfy due process or otherwise, to review the record in these cases once counsel has stated that counsel can find no arguable issues on appeal or required to receive and resolve issues raised individually by the defendant.

I would add that, in my 24 years' experience at the Court of Appeal, after reviewing hundreds of supplemental briefs filed by defendants in *Wende* appeals, I have not found one that had any merit. But they each have required the court's staff attorneys and justices to spend additional time, and sometimes much additional time, addressing and resolving what are routinely, if not exclusively, frivolous arguments.

As to the view that these supplemental briefs are of right and require the court's resolution, I would also point to the following.

"The general rule that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case (*People v. Merkouris* (1956)[ ] 46 Cal.2d 540, 554 applies to the filing of *pro se* documents on appeal (*Electric Utilities Co. v. Small-page* (1934), 137 Cal.App. 640, 641-642)." (*People v. Mattson* (1956) 51 Cal.2d 777, 798 (*Mattson*).)

". . . .[T]here is no right – constitutional, statutory, or otherwise – to self-representation in a criminal appeal in California. (See *People v. Stanworth* (1969) 71 Cal.2d 820, 834–835[ ] [no right to dismiss counsel in capital appeals]; *People v.*

4

*Scott*[ (1998)] 64 Cal.App.4th [550,] 569 573[ ] [noncapital appeals].)  In particular, neither the Sixth Amendment nor the due process clause of the Fourteenth Amendment to the federal Constitution furnishes a basis for finding such a right.  (*Martinez*[ (2000)] 528 U.S. [152,] 160–163 [] [(*Martinez*)].)  As the United States Supreme Court recently explained, the sole constitutional right to self-representation derives from the Sixth Amendment, which pertains strictly to the basic rights that an accused enjoys in defending against a criminal prosecution and does not extend beyond the point of conviction.  (*Martinez,* [at pp.] 154, 160–161.)  Emphasizing that the change in one's position from 'defendant' to 'appellant' is a significant one, the high court found that the balance between a criminal defendant's interest in acting as his or her own lawyer and a state's interest in ensuring the fair and efficient administration of justice 'surely tips in favor of the [s]tate' once the defendant is no longer presumed innocent but found guilty beyond a reasonable doubt.  (*Id.* at p. 162.)  Consequently, the court concluded, states may exercise broad discretion when considering what representation to allow and may require an indigent inmate 'to accept against his will a state-appointed attorney' for representation on a direct appeal without violating the federal Constitution.  (*Martinez,* [at p.] 164.)

"As relevant here, represented capital inmates are not permitted to present their automatic appeals personally to this court.  That is, such inmates have no right personally to supplement or supersede counsel's briefs and arguments on the merits of their appeals.  (*Clark*[ *(1992)*] 3 Cal.4th [41,] 173 [(*Clark*)]; *Mattson, supra,* 51 Cal.2d at p. 798 [].)  As we explained in *Mattson*, pro se submissions pertaining to an appeal will not be filed or considered '[b]ecause of the undesirability of fruitlessly adding to the burdens of this court the time-consuming task of reading *pro se* documents which are not properly before us, and, if they be read, of consequently enlarging [the] opinion by a recountal and discussion of the contentions made in propria persona . . . .'  (*Mattson, supra*, 51 Cal.2d at p. 798.)

5

"Thus, all appellate motions and briefs must be prepared and filed by counsel and may not be submitted pro se. (*Clark, supra,* 3 Cal.4th at p. 173.) Although we will accept and consider pro se motions regarding representation (i.e., *Marsden* motions to substitute counsel), such motions 'must be clearly labeled as such' and 'must be limited to matters concerning representation.' (*Clark,* [at p.] 173.) *Any other pro se document* offered in an appeal 'will be returned unfiled' (*ibid.*), or, if mistakenly filed, will be stricken from the docket (*Mattson, supra,* 51 Cal.2d at p. 798)." (*In re Barnett* (2003) 31 Cal.4th 466, 473-474, emphasis added.)

Although *Barnett* was a capital appeal, notably, the Supreme Court cited with approval *People v. Scott* and *People v. Mattson,* thus extending the same appellate rules to noncapital appeals.

Thus, in a non-*Wende* appeal such as this, the defendant, as an individual, does not have the right to submit his or her own arguments to the court for resolution.

I recognize that some courts have adopted a procedure that allows them to consider and decide an appellant's arguments raised in his or her own supplemental briefs by turning to the court's supervisory powers to control the proceedings before it. (See e.g., *Cole, supra,* 52 Cal.App.5th 1023, review granted.) I submit that those courts simply do not have the authority to do so given the California Supreme Court's holding in *Barnett.*

I recognize also that the issues we here consider are pending before our Supreme Court and the court may in the future extend what have become known as "*Wende* procedures" to appeals such as this one from orders denying postconviction relief. But it must be left up to that court to do so. Until it does, I would dismiss appeals such as the one presently before us.

_____/s/_____

Hull, Acting P.J.

6